LARET INVESTMENT COMPANY, a Corporation, Appellant, v. BERNARD F. DICKMANN, Mayor of the City of St. Louis; LOUIS NOLTE, Comptroller of the City of St. Louis; MICHAEL J. CULLINANE, City Register of the City of St. Louis; HOUSING AUTHORITY, of the City of St. Louis, a Corporation, and WILLIAM C. CONNETT, JOSEPH J. HAUSER, FRANK L. WILLIAMS, LUELLA B. SAYMAN and H. H. HANDLAN, Commissioners of said HOUSING AUTHORITY, of the City of St. Louis.—134 S. W. (2d) 65.

Court en Banc, December 5, 1939.

450

*Frank E. Morris* for appellant.

*Edgar H. Wayman* for respondents.

*Jones, Hocker, Gladney & Grand, Jos. H. Grand* and *Lon Hocker, Jr., amici curiae,* in behalf of St. Louis Real Estate Exchange, O'Fallon Park Protective Association, and Building Owners' & Managers' Association of St. Louis, Inc.

CLARK, J.—Appeal from the Circuit Court of St. Louis City. The suit is to enjoin the execution of a certain agreement, called a "Cooperation Agreement," between the City of St. Louis and the Housing Authority of the City of St. Louis, on the ground that said agreement attempts, in violation of the Missouri Constitution, to exempt the property of the Housing Authority from taxation. Defendants jointly demurred to the petition on the ground that it did not state a cause of action; the chancellor sustained the demurrer and, plaintiff declining to plead further, entered a decree dismissing the petition. Plaintiff has appealed.

The sole issue raised in the petition is whether the property of the Housing Authority of the City of St. Louis is exempt from taxation. The Missouri Constitution, Article X, Section 6, provides: "The property, real and personal, of the State, counties and other municipal corporations . . . shall be exempt from taxation." Section 7 of the same article reads: "All laws exempting property from taxation, other than the property above enumerated, shall be void."

Plaintiff's petition shows that the Housing Authority is a corporation duly organized pursuant to an Act of the General Assembly

approved May 15, 1939, and published in the Session Acts for 1939 on pages 488-502, inclusive. The petition also shows that the City of St. Louis has, by ordinance, duly declared the need for a housing authority in said city, which has a population of more than 600,000.

The Housing Act of 1939 declares: that within the State there is a shortage of safe or sanitary dwelling accommodations available at rents which persons of low income can afford; that such persons are forced to occupy overcrowded, congested, unsanitary and unsafe dwelling accommodations; that this causes an increase in and spread of disease and crime and constitutes a menace to the health, safety, morals and welfare of the residents of the State and impairs economic values, necessitating excessive expenditures of public funds for crime prevention and punishment, public health and safety, fire and accident protection and other public services; that these areas in the State cannot be cleared, nor the shortage of safe and sanitary dwellings for such persons be relieved, through the operation of private enterprise, and that construction of housing projects for such persons would therefore not be competitive with private enterprise; that the clearing, replanning and reconstruction of such unsanitary, etc., areas are public uses and purposes for which public money may be spent and private property acquired and are governmental functions of State concern; that it is in the public interest that work on such projects be commenced as soon as possible in order to relieve employment which now constitutes an emergency; that the necessity in the public interest for the provisions of the Act is declared as a matter of legislative determination.

. The Act is made to apply to cities having a population of 600,000 or more, but only when the governing body of such city, in a specified manner, shall declare the need for a housing authority; certain terms are defined, including "slum," "housing project," "persons of low income," etc.; a Housing Authority is created as "a municipal corporation, exercising public and essential governmental functions," having certain defined powers; the manner of the organization and operation of the Authority is set forth in detail; it is given power to acquire property, by purchase, donation, lease or condemnation; to issue bonds secured by pledge of its revenues or mortgage on its property and to cooperate with agencies of the government of the United States in carrying out the purposes of the Act and Federal enactments, borrow money and accept grants from the Federal government; it may make investigations as to housing and sanitary conditions and carry out projects of slum clearance and construction of sanitary dwellings; the amount of rent that may be charged tenants is proportioned to their income; careful provision is made that the Authority shall not be operated for profit nor as a source of revenue to the city; the real property of the Authority

is exempted from sale under execution; the Authority is made subject to planning, zoning, sanitary and building laws, ordinances and regulations applicable to the locality in which any housing project is situated.

The Act does not expressly provide that the property of the Authority shall be exempt from taxation, but does expressly declare that the Authority is a municipal corporation incorporated for essential public purposes. Section 9743, Revised Statutes Missouri 1929 (Mo. Stat. Ann., p. 7863), exempts from taxation "lands and other property belonging to any city, county or other municipal corporation in the state." However, the absence of any express exemption in the Act is of no consequence, because the constitutional provision above quoted is self enforcing and controlling. If the Housing Authority created under the Act is a valid municipal corporation performing an essential public function, then the property of the Authority is exempt from taxation without any statutory declaration to that effect, and its property would be exempt even if the Act had declared it taxable.

What is a "municipal corporation" within the meaning of the Missouri Constitution? This court has never given an answer to that question which will apply to the facts of the instant case.

The term "municipal corporation" is sometimes used in a strict sense to designate a corporation possessing some specified power of local government. In a broader sense it includes public, or quasi-public, corporations designed for the performance of an essential public service. [See Dillon on Municipal Corporations (5 Ed.), sec. 32.]

This court has adopted the broader definition. In State ex rel. Caldwell v. Little River Drainage District, 291 Mo. 72, l. c. 79, 236 S. W. 15, we said:

"In its strict and primary sense the term 'municipal corporation' applies only to incorporated cities, towns and villages, having subordinate and local powers of legislation. [Heller v. Stremmel, 52 Mo. 309.] But in the larger and ordinarily accepted sense the term is applied to any public local corporation, exercising some function of government, and hence includes counties, school districts, townships under township organization, special road districts and drainage districts."

[See also State ex rel. Kinder v. Little River Drainage District, 291 Mo. 267, 236 S. W. 848; Grand River Drainage District v. Reid, 341 Mo. 1246, 111 S. W. (2d) 151; State ex rel. Caldwell v. Little River Drainage District, 291 Mo. 72, 236 S. W. 15; Harris v. Bond Co., 244 Mo. 664, 149 S. W. 603.]

The broad definition of a municipal corporation requires that it be formed for the purpose of performing some governmental function. The General Assembly, in the Act under consideration, declared

the Housing Authority to be a municipal corporation, defined its purposes, declared them to be governmental functions, and declared the existence of an urgent necessity for its services.

The finding and declaration of the General Assembly are not binding on this court, but are entitled to great weight. We do not know, and are not at liberty to ascertain what evidence they had before them; we can only indulge the persumption that the evidence was sufficient to justify them in finding the existence of the conditions set forth in their declaration. We must presume that the declared purposes are "public purposes" and "governmental functions" unless it clearly appears that they are not in harmony with the provisons of the Constitution. [Ex parte Renfrow, 112 Mo. 591, l. c. 595, 20 S. W. 682; Halbruegger v. St. Louis, 302 Mo. 573, 262 S. W. 379; Jennings v. St. Louis, 332 Mo. 173, 58 S. W. (2d) 979.]

Appellant says that in determining whether the declared purposes of the Housing Authority are public functions we must be guided by a consideration of "whether the activity to be undertaken is, according to history and the common acceptance of mankind, one for public action or private enterprise, and whether the public generally, or only a limited group, is benefited thereby." To this we do not agree. To be guided solely by whether a given activity had, at some previous time, been recognized as a public purpose would make the law static. Such a standard would compel us to retain in the law, as appropriate for public expenditure, activities which have ceased to be of public concern; and would prevent us from adopting new public functions regardless of how essential to the public welfare they may have become by reason of changed conditions. Nor can we be governed alone by the fact that only a portion of the public will be directly benefited, or benefited in a greater degree than the public generally. The Supreme Court of Pennsylvania in considering a similar Act (Dornan v. Philadelphia Housing Authority, 200 Atl. 834, l. c. 840) said:

"Thus the fact that the dwellings cannot and will not be occupied by all, but only by a few of the public having the prescribed qualification of poverty, is wholly lacking in legal significance, because the same may be said as to jails, poorhouses, and indeed many other institutions which are necessarily confined to a use, voluntary or involuntary, by certain selected portions of the population. An occupancy by some may promote or even be vital to, the welfare of all. Nor is importance to be ascribed to the circumstances that some persons—the tenants—will from time to time receive more benefit from the use of the dwellings than the general public. The same observation would apply to hospitals and schools."

In this connection appellant cites: State ex rel. Kansas City v. Orear, 277 Mo. 303, 210 S. W. 392; Kennedy v. City of Nevada, 281 S. W. 56; United States v. Certain Lands, 78 Fed. (2d) 684; In Opinion of Justices, 211 Mass. 624, 98 N. E. 611.

In State ex rel v. Orear, supra, this court held that a city could not legally engage in selling ice to the general public, and in Kennedy v. Nevada, supra, the Kansas City Court of Appeals held that a city was without legal authority to operate a tourist park as a business. Neither of those cases was decided under a statute declaring (as the Act does here) that it was necessary to the public health, morals, safety and welfare for the city to engage in the particular activity then under consideration. In United States v. Certain Lands the court held, in effect, that the Federal Government cannot condemn private property except for *Federal* governmental purposes. That case recognizes the distinction between the powers of the Federal and State governments and does not purport to decide what is a "public use" under a State Constitution. In Opinion of the Justices, supra, the Supreme Court of Massachusetts in 1912 furnished an opinion to the Legislature that a proposed law, authorizing the Commonwealth to go into the business of buying and leasing homes for "mechanics, laborers and other wage earners," was void. The reasoning of that case furnishes some support to appellant's contention. However, the Act then under consideration differed materially from the Act now before this court, in that: it sought to provide homes for all persons, regardless of size of income; it made no declaration of urgent necessity; it did not find the existence of conditions inimical to the public safety, health, morals and welfare and declare that private industry had failed to relieve such conditions; it did not invoke the police power in the clearing of slum districts and the building of sanitary dwellings. Notwithstanding said opinion, the Legislature of Massachusetts in 1938 (Laws 1938, p. 635) passed a law almost identical with the Act now before this court. So far as we know the 1938 Act has not been considered by the Massachusetts courts.

This court in 1924 held valid the issuance of bonds by the City of St. Louis for the erection of a municipal auditorium as being for a public purpose under our Constitution (Halbruegger v. St. Louis, supra); and in 1933 we held that bonds for poor relief are for a legitimate public purpose. [Jennings v. St. Louis, 332 Mo. 173, 58 S. W. (2d) 979.]

While the validity of the Act under consideration in the instant case is a new question in this court, similar acts have been passed by the Legislatures of nearly all the other states and, so far as we can find, all of them have been held valid by the courts. We herewith cite a number of those cases, selected from states which have constitutional provisions similar to ours above quoted: Matter of New York Housing Authority v. Muller, 270 N. Y. 333; Dornan v. Philadelphia Housing Authority (Pa.), 200 Atl. 834; Marvin v. Housing Authority of Jacksonville (Fla.), 183 So. 145; Edwards v. Housing Authority (Ind.), 19 N. E. (2d) 741; Spahn v. Stewart, 268

Ky. 97, 103 S. W. (2d) 651; Williamson v. Housing Authority (Ga.), 199 S. E. 43; McNulty v. Owens, 188 S. C. 377, 199 S. E. 425; Krause v. Peoria Housing Authority, 370 Ill. 356, 19 N. E. (2d) 193; State ex rel. v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725; Rutherford v. City of Great Falls, 107 Mont. 512, 86 Pac. (2d) 656; Knoxville Housing Authority v. City of Knoxville (Tenn.), 123 S. W. (2d) 1085; In re Opinion of the Justices (Ala.), 179 So. 535; Wells v. Housing Authority, 213 N. C. 744, 197 S. E. 693. It is unnecessary to quote from those cases. Suffice it to say that in them every point that resourceful counsel could conceive was raised and decided. Most of those opinions were rendered by the unanimous vote of the judges and in all but one of them the exact question involved in the instant case was decided, to-wit: that the property of a Housing Authority, such as that created by the Missouri Act, is exempt from taxation. We approve such holding as to exemption from *ad valorem* or property taxes.

On November 6, 1939, by agreement of counsel arguments were waived and this cause was submitted on briefs. On the same day we granted leave to certain corporations, not parties to the cause, to file within ten days a brief as *amici curiae*. Within the time fixed this brief has been filed. It repeats the objection urged by appellant to the constitutionality of the Act under consideration, but makes no argument and cites no authorities on the point. The brief of *amici curiae* also contends that the Act is unconstitutional as being a special or local law in violation of Section 53 of Article IV of the Missouri Constitution, citing many cases. The only ground urged against the constitutionality of the Act by appellant in his petition is that it violates Sections 6 and 7 of Article X. That was the only question presented to the trial court and the only question discussed in the briefs filed by the parties in this court.

It is well settled that objections to the constitutionality of a statute must be raised at the first opportunity. [Magill v. Boatmen's Bank (Mo.), 250 S. W. 41.] Since the question could have been raised in the petition, but was not, it is clear that it could not be raised in this court by appellant. True, *amici curiae* have had no previous opportunity to urge the question, but we cannot accord them greater privilege than that possessed by appellant. They must take the case as they find it on the record. [In re Roff's Estate, 50 S. W. (2d) 156, 226 Mo. App. 1203, transf.; Fields v. Luck, 34 S. W. (2d) 710, 327 Mo. 113; State ex rel. Bates v. Remmers, 325 Mo. 1175, 30 S. W. (2d) 609.]

In 3 Corpus Juris, Secundum, page 1050, it is said: "an *amicus curiae* has no right to question the constitutionality of an act, and the court will not pass on grounds of invalidity urged by an *amicus curiae* but not presented by the parties." [Citing: State ex rel. Burg

v. City of Albuquerque, 31 N. M. 576, 249 Pac. 242; State v. Martin, 210 Iowa, 207, 230 N. W. 540.]

The decree of the chancellor is hereby affirmed. All concur.