[490]
 

 CONKLING, J.
 

 This is an action for a declaratory judgment that the prior tax exempt status of defendant-respondent St. Louis Housing Authority shall no longer continue. The Chancellor adjudged all the property of Housing Authority to be tax exempt. Plaintiff appealed.
 

 Plaintiff is a taxpayer and the owner and operator of many parcels, of improved real estate in the City of St. Louis. In addition to the St. Louis Housing Authority, the City-of St. Louis, its. Assessor, Comptroller and Collector were also made defendants.
 

 Judgment was sought declaring that since the effective date of our 1945 Constitution all real and personal property of Housing Authority has been subject to the payment of ad valorem taxes; that bonds of Housing Authority are debts of the City of St. Louis within the meaning of Sections 26, 27 and 28 of Article VI of the Constitution; and that it is the duty of the City Assessor, Comptroller and Collector' to proceed to collect the above mentioned taxes.
 

 Defendants City of St. Louis, its Assessor and Collector by their joint answer asked the court to find plaintiff was not entitled' to the relief prayed; in its separate answer Housing Authority asked the ’ same; but the City Comptroller in his separate answer prayed the court to adjudge that Housing Authority’s property was subject to ad valorem taxes. The City of Kansas City was permitted to intervene and file answer. At the request of the St. Louis Real Estate Board D. Calhoun Jones, Esq. was appointed Amicus Curiae.
 

 The cause was submitted to the court below upon the pleadings,- an agreed statement of facts and exhibits. The court adjudged that all of Housing Authority’s properties are exclusively used “for' purposes purely charitable” under Section 6 of Article X, of the Constitution and Mo. R. S. A. 10942.4, and are exempt from all ad valorem taxes; that the bonds of Housing Authority are not debts or obligations of the City of St. Louis, said bonds being authorized by Mo. R. S. A. Sec. 7866.
 

 Upon stipulation the cause was submitted here without argument upon the briefs filed by appellant and Housing Authority. In the two page brief of the City of St. Louis, its Assessor and Collector, the
 
 *750
 
 only citations are from the Bard of Avon. In the two page brief of the intervenor we are cited only to the New Testament.
 

 
 *747
 
 Bader Realty and Invesment Company, a Corporation, Appellant, v. St. Louis Housing Authority, a Corporation; City of St. Louis, a Municipal Corporation; Eugene M. Guise, as Assessor of the City of St. Louis; Louis Nolte, as Comptroller of the City of St. Louis; Richard E. Gruner, as Collector of the City of St. Louis, Respondents.
 

 No. 41279.
 

 217 S. W. (2d) 489.
 

 Court en Banc,
 

 January 20, 1949.
 

 'BoVért :W.' Herr
 
 for plaintiff-appellant.
 

 
 *750
 
 In Laret Inv. Co. v. Dickmann, 345 Mo. 449, 134 S. W. (2d) 65, decided in 1939 under the provisions of our Constitution of 1875, we held the property of Housing Authority tax exempt as the property of a “municipal corporation” within the meaning of that term as used in the 1875 Constitution. But plaintiff now contends that the property of Housing Authority is not used “for purposes purely ^charitable ’ ’; that under our present Constitution it is not a ‘ ‘political subdivision” and, therefore, its property is subject to ad valorem taxation. Housing Authority was organized under Mo. R. S. A. Secs. 7853 to 7875, inclusive, and ordinances of the City of St. Louis.
 

 ■ In exercising its functions in the City of St. Louis, Housing Authority has caused to be demolished and has eliminated 1134 slum housing units unfit for human habitation. The City of St. Louis has likewise caused to be demolished and has eliminated '184 slum housing units likewise unfit. The above was done under an agreement of January 31, 1940, between Housing Authority and the City wherein Housing Authority agreed to undertake construction of low rent housing projects for low income families. [491] That Cooperation Agreement was authorized by Ordinance No. 41726.
 

 Pursuant to contracts with the City, Housing Authority executed' “Assistance Contracts” with the United States Housing Authority and Federal Public Housing Authority whereby it obtained funds and credit in excess of $7,000,000. It thereupon caused three large sites in the City’s slum area to be razed. That cleared area approximated 21 square blocks.
 

 Thereupon Housing Authority constructed and is now operating two housing projects providing low rent housing units for 1315 low income families. Six hundred fifty-eight are for negro families at Carr Square Village and'six hundred fifty-seven are for white families in Clinton Peabody Terrace. To be eligible for tenancy families must be living in sub-standard accommodations, and must be of low income as per regulations adopted by Housing Authority. ' A long waiting list of eligible families exists for each project. All properties are • exclusively used and will be used for housing low income families. ■There are no stores or commercial establishments. During- its operation Housing Authority has operated the projects as directed -by the statutes and has provided decent, safe and sanitary housing accomoda-tions for low income families at a price they can pay. Upon the third site, now razed and cleared at a cost in excess of $3,000,000, Housing Authority intends immediately to construct another project to house - 550 low income families. Included as part of the rent for each unit are the services of a night watchman, hot and cold running water, . electricity for lighting, steam heat, a gas range, gas for cooking and icebox. Since the erection of these housing units, the condition of ad-
 
 *751
 
 jaeent property has been much improved.and real estate tax assessments thereon have been increased.
 

 The housing1 projects produce insufficient income to pay the cost of operation but the difference between the cost of operation and 'income from rents from the low income-families is made up by contributions from the Federal-Government. Decent living ’ quarters are thus, furnished families who otherwise would not have them and-this project has eliminated living' conditions detrimental to health- and tending to promote immorality and juvenile delinquency. Under its agreements with the City, in lieu of taxes, Housing-Authority pays the City amounts equal to
 
 8%
 
 of its net shelter rents, together with other sums voluntarily ■ paid from accumulated surplus, when such contingency occurs. Those amounts.so collected by the City tax eol- . lector are' distributed to the various taxing agencies. .
 

 Plaintiff first contends, that the property of Housing Authority is not used exclusively “for purposes purely- charitable” as -those words are used in See. 6, Article X, of thee Constitution and in Mo. R. S. A. 10942.4, Laws-Mo. 1945, p. 1799, Sec. 5.
 

 The-Housing Act of 1939, (particularly Mo. R. S. A. Sec. 7854) provides: “It is hereby declared: (a) that there exist in the state insanitary-or unsafe dwelling-ácommodations and that'persons'of low income are forced to reside.in such insanitary or unsafe accommodations; that within the state there is a shortage of safe or sanitary ■ dwelling accommodations available at: rents which- ■ persons of Tow income can afford and that' such persons are forced to occupy overcrowded and congested dwelling accommodations; that the aforesaid conditions cause an increase in and spread of disease and crime and constitute a menace to. the ¡health, safety, morals and welfare of the residents of the state and impair economic (values; that these conditions necessitate excessive-and disproportionate expenditures of public funds for crime prevention, .and punishment, .public- health and safety, fire and accident protection, and other public services and facilities; (b) that these areas in the state cannot be cleared, nor can the shortage of .safe and sanitary, dwellings for persons of low income be relieved, through the operation of -private enterprise, and that the construction of housing projects for persons:,.of low- income (as herein defined) would therefore not .be competitive .with-private enterprise; (e) that the clearance, replanning and reconstruction of .the areas in which insanitary or unsafe housing conditions -exist-and the providing-of safe and sanitary dwelling accommodations for persons of low income [492] are public uses and purposes for which public money may be spent and private- property acquired and are governmental functions of state concern; (d) that-it-is in the public interest that work on projects for such purposes be commenced as soon as possible in order to relieve unemployment which now constitutes an emergency; and the necessity in the -public interest for the provisions hereinafter enacted,
 
 *752
 
 is hereby declared as a matter of legislative determination. Laws 1939, p. 488, Sec. 2.”
 

 •Our 1945 Constitution, Sec. 6 of Article X, provides: “All property, real and personal, of the state, counties, and other political subdivisions, . . . shall be exempt from taxation; and all property, real and personal, not held for private or corporate profit and used exclusively . . . for purposes purely charitable . . . may be ■ exempted from taxation by general law.”
 

 After the adoption of the 1945 Constitution, Section 10937 R. S. Mo. 1939, our former exemption statute, was repealed and a new statute, Mo; R. S. A. Sec. 10942.4, Laws Mo. 1945, page 1800, was enacted and became effective December 19, 1945. In that exemption statute it is, in part, provided: “The following subjects shall be exempt from taxation for state, county or local purposes: . ■ . . Sixth, all property, real and personal actually and regularly used exclusively . . . for purposes purely charitable.”
 

 •■'We concede that exemptions from taxation are not favored in law and claims for exemption are to be strictly construed in the public favor, but such construction must be a reasonable one. Salvation Army v. Hoehn, 354 Mo. 107, 188 S.
 
 W.
 
 (2d) 826, Missouri Goodwill Industries v. Gruner, 357 Mo. 647, 210 S.
 
 W.
 
 (2d) 38.
 
 We
 
 likewise concede that the right to exemption from taxation is grounded upon •the use made of the property sought to be exempted.
 

 ■ . The courts formerly held a somewhat limited view and rather narrowly interpreted the words “charity” and “charitable purposes.” But the present day concept of “purposes purely charitable” is broader. than mere relief of the destitute or the giving of alms. As now viewed it comprehends activities not self-supporting “which are intended to improve the physical, mental and moral condition of the recipients and make it less likely that they will become burdens on , society and more likely that they will become useful citizens”. Salvation Army v. Iloehn, supra, Missouri Goodwill Industries v. Gruner, supra.
 

 It has been said that charity ‘ ‘ embraces the improvement and happiness ¡of man” and that “a charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man”. In re Burrough’s Estate, 357 Mo. 10, 206 S. W. (2d) 340, 344. The record here shows that the rent income from the units built and to be built is committed to the basic purpose of these low cost housing units. Such units are not constructed nor are they operated for profit. The Housing statute itself forbids operation for profit. Mo. R. S. A. Sec. 7861.
 

 The purpose of the Act, as above shown, is that areas of congested ■population shall be free from the menace of slums and from the fire hazards, disease, crime and juvenile delinquency which result from .slum housing, and which cause disproportionate expenditure of pub-
 
 *753
 
 lie funds -for crime prevention, punishment, public health and safety, lire and. accident .prevention, . and other public services and facilities.” Those uses .are declared by the General Assembly to be public uses and to be “governmental functions of state concern”: That this is charity of the most practical character we are firmly convinced. The record facts now before us establishes the use of this property is “for purposes purely charitable”. That such use is for a purely charitable purpose is widely held in many jurisdictions in well considered rulings. See cases cited above and see also, Hogue v. Housing Authority of N. Little Rock, 144 S. W. (2d) 49 (Ark.), Williamson v. Housing Authority of Augusta, 186 Ga. 673, 199 S. E. 43, Springfield Housing Authority v. Overaker, 390 Ill. 403, 61 N. E. (2d) 373, Krause v. Peoria Housing Authority, 370 Ill. 356, 19 S. E. (2d). 193, Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 Atl. 834, Knoxville Housing Authority v. City of Knoxville, 174 Tenn. 76, 123 S. W. (2d) 1085, [493] Marvin v. Housing Authority of Jacksonville, (Fla.) 183 Sou. 145, State ex rel. v. Housing Authority of New Orleans, 190 La. 710, 182 Sou. 725, Wells v. Housing Authority of Wilmington, 213 N. C. 744, 197 S. E. 693, City of Dallas v. Higginbotham, (Tex.) 143 S. W. (2d) 79, 130 A. L. R. 1053, New York City Housing Authority v. Muller, 270 N. Y. 333, 1 N. E. (2d) 153, 105 A. L. R. 905, Belovsky v. Redevelopment Authority of Philadelphia, 357 Pa. 329, 54 Atl. (2d). 277, 172 A. L. R. 953, and authorities cited in those cases.
 

 In New York City Housing Authority v. Muller, supra, the court ■observed: “The public evils, social.and economic, of such conditions, are unquestioned and unquestionable. Slum areas are the breeding places of disease which take toll not only from denizens, but, by spread, from the inhabitants of the entire city and state. Juvenile delinquency,- crime and immorality are there-born, find protection, and flourish. Enormous economic loss results directly from the necessary expenditure of public funds to maintain health and hospital services for afflicted slum dwellers and to war against crime and immorality. Indirectly there is an equally heavy capital loss and a diminishing return in- taxes because of the areas blighted by the existence of the slums. Concededly, these are matters of state concern . . . since they vitally affect the health, safety and welfare of the public”.
 

 It is urged upon us that no tenant in any unit of Housing Authority is exempt from payment of some rent, that the operation is therefore for profit and that many tenants pay at a rental rate exceeding that charged for privately owned housing. These contentions lack merit.
 

 The property of Housing Authority is employed for an exempt purpose. All rent revenue is used for the basic purpose of the housing units. Merely that some rent, however small, is charged each family cannot change the charitable and public character of the project. The property cannot be operated for revenue. .It is not operated for
 
 *754
 
 revenue. The rent revenues fall far short of meeting operating expense. .The mere fact that the privately owned property may be unable to meet the competition of public housing units for low income families cannot change the public character of the use of such housing units. Nothing could be more public in value or more beneficial to the community as a whole than the clearance and reconstruction of those slum areas wherein men, women and little children are crowded into hovels of such character as to wholly lack the material things and environmental values productive of good citizenship, good morals and well being. It cannot be regarded as odd or unusual that low income families would prefer to live in these modern housing units. Such units are certainly devoted to a public purpose.
 

 To us the conclusions seem inescapable and we rule that all the property of Housing Authority is exclusively used for purposes purely charitable, that Housing Authority is a public charity and its property is and should be exempt from ad valorem taxation. These conclusions render unnecessary a consideration of appellant’s next contention that Housing Authority is not a “political subdivision” within Sections 6 and 15 of Article X of our Constitution. That contention is therefore exju-essly reserved and is not ruled.-
 

 We are not to be understood as ruling questions either social or economic in character nor are we to be considered as holding that the state or any of its political subdivisions may engage generally and indiscriminately in the housing business' or any, other general business enterprise. As we read the “Housing Authorities Law” (Mo. R. S. A. Sec. 7853 to 7875, inclusive), its underlying purpose is slum clearance, public safety, public health, and the prevention of crime and juvenile delinquency. Those matters present a proper field for the exercise of the state’s police power. The questions of policy and expediency involved here were for the General Assembly and the City Council of the City of St. Louis. What is for the public good and what are public purposes and uses in the first instance are matters for legislative determination. Those legislative bodies, within their constitutional and statutory powers, may experiment. Courts determine question of power, not policy.
 

 [494] We come now to appellant’s contention that the bonds issued by Housing Authority are in fact an indebtedness of the City of St. Louis. In the Housing Authority Act, Mo. R. S. A. Sec. 7866, it is provided that the bonds which Housing Authority is there authorized to issue shall not be a debt of the city, the county or the state; that neither city, county nor state shall be liable thereon; nor in any event shall the bonds be payable out of any funds or properties other than those of Housing Authority; and that the bonds shall not be an indebtedness within the meaning of any constitutional, statutory, or charter debt limitation or restriction. Under identical and similar constitutional and statutory provisions, this contention has been ruled
 
 *755
 
 adversely to appellant’s contention, in many jurisdictions. Krause v. Peoria Housing Authority, supra, Williamson v. Housing Authority of Augusta, supra, Wells v. Housing Authority of Wilmington, supra, Mumpower v. Housing Authority of the City of Bristol, (Va.) 11 S. E. (2d) 732, 741, Lloyd v. Twin Falls Housing Authority, (Idaho) 113 Pac. (2d) 1102. We adopt the reasoning of those cases upon the instantly raised contention.
 

 The judgment of the circuit court is affirmed.
 

 It is -so ordered.
 

 All concur.