ST. LOUIS HOUSING AUTHORITY, a Municipal Corporation, Plaintiff-Appellant, HOUSING AUTHORITY OF KANSAS CITY, a Municipal Corporation, Intervenor-Respondent, v. CITY OF ST. LOUIS, a Municipal Corporation, No. 42516—239 S. W. (2d) 289.

Court en Banc, April 19, 1951.

*Paul J. Kaveney* for plaintiff-appellant.

*John B. Gage* and *James A. Moore* for intervenor-respondent; *Gage, Hillix & Phelps* of counsel.

*James E. Crowe*, City Counselor, and *John P. McCammon*, Associate City Counselor, for defendant-respondent City of St. Louis.

[291] CONKLING, J.—■ This action by St. Louis Housing Authority, a chartered municipal corporation organized under our state "Housing Authorities Law", R. S. Mo. 1949, Secs. 99.010 to 99.230, originally approved May 15, 1939, Laws Mo. 1939, p. 488 (hereinafter called plaintiff) against the City of St. Louis, Missouri, a municipal corporation (hereinafter called defendant) is one under the Declaratory Judgment Act. Plaintiff seeks a judgment declaring that (1) plaintiff and defendant have constitutional and statutory authority to execute a certain contract called the "Cooperation Agreement", and (2) that said "Cooperation Agreement" is valid and legally commits plaintiff and defendant to the terms and conditions thereof. The validity and effect of that Cooperation Agreement is in issue here. A justiciable controversy is presented.

After defendant had filed its answer, Housing Authority of Kansas City (hereinafter called Intervenor) and also organized under our "Housing Authorities Law", supra, was given leave to intervene and

filed in this cause in the circuit court its interplea and answer in which it prayed the same declarations sought by plaintiff.

After the judgment was entered below, plaintiff filed its motion for new trial contending that the judgment below is insufficient; does not remove the uncertainty and doubt as to plaintiff's rights; does not adequately determine the authority of plaintiff and defendant to execute the "Cooperation Agreement", nor the effect thereof; does not completely adjudicate their rights, and does not give that degree of relief contemplated by our Declaratory Judgment Act. Plaintiff and Intervenor here make those contentions upon plaintiff's appeal. After an examination of the transcript, exhibits, briefs and the authorities cited we have concluded that under the instant circumstances the judgment entered below is deficient. Smith v. Pettis County, 345 Mo. 839, 136 S. W. (2d) 282, 285, City of Joplin v. Jasper County, 349 Mo. 441, 161 S. W. (2d) 411, 414, Hyde, Declaratory Judgments, 26 Washington University Law Quar. 489. We must therefore proceed to consider the merits of the issues, determine and declare the rights of the parties, dispose of this appeal and "give such judgment as such (trial) court ought to have given." R. S. Mo. 1949, Secs. 512.160 and 527.010 to 527.140.

The facts are not in dispute. From the record before us we find these facts: On September 2, 1949, plaintiff applied to Public Housing Administration (hereinafter called PHA), a federally owned corporation, and an agency of the Federal government, for a preliminary loan, under the United States Housing Act, as amended, U.S.C.A., Title 42, Chapter 8, Articles 1401-1433 (hereinafter called the "Federal Act"), to make preliminary surveys, etc., for low-rent and slum-clearance housing projects in St. Louis, to include 5800 new dwelling units. PHA is empowered under the Federal Act to extend financial aid to state or local public housing authorities to aid in the development and operation of low-rent housing and slum-clearance projects. The above application of plaintiff was approved by defendant by Ordinance No. 45,080 of the Board of Aldermen of St. Louis, wherein defendant declared the need in the defendant city for such low-rent public housing for low-income families and that such need is not being met by private enterprise. That ordinance is before us.

The above preliminary loan was approved. Pursuant thereto plaintiff executed a preliminary Loan Contract with PHA for the above purposes and the latter advanced plaintiff $86,000 for which plaintiff executed a note. A copy of the preliminary Loan Contract and note are before us.

On March 14, 1950, plaintiff and defendant executed the instant Cooperation Agreement, the validity of which is in issue here. That agreement had been authorized by a resolution, passed by plaintiff, and by an Ordinance No. 45,182, enacted [292] by the St. Louis Board of Aldermen on January 9, 1950. The Cooperation Agreement, resolution

and ordinance are before us. Plaintiff intends to and will execute a "Proposed Contract" with PHA in which the latter will agree to lend plaintiff $69,600,000, that sum being 90% of the cost of the acquisition and construction of the proposed 5800 units of low-rent housing. Under that proposed contract PHA will make to plaintiff annual contributions for not to exceed 40 years at not to exceed the federal going rate of interest applied to the total cost of the project. The federal going rate is defined in the Federal Act. The loans of federal money to plaintiff for these purposes will be on a wholly self-liquidating basis to cover capital costs and will be secured by a pledge of revenues derived from operating the housing project and by a pledge of annual contributions made for such project by the Federal Government. The contributions are to enable plaintiff to construct, maintain and operate the project on a low-rent basis.

Under the Proposed Contract, the loans advanced to plaintiff by PHA will be also secured by bonds, which shall be payable out of plaintiff's funds, property and income. Plaintiff may sell such bonds with the approval of PHA but such bonds of plaintiff, under R. S. Mo. 1949, Sec. 99.140, will be secured exclusively by the property, income and revenues of plaintiff. Under that statute the bonds "shall not be a debt of the city (defendant), the county, the state * * * and neither the city or the county, nor the state * * * shall be liable thereon, nor in any event shall such bonds or obligations be payable out of any funds or properties other than those of said authority." See Bader Realty & Investment Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S. W. (2d) 489, 494. Plaintiff has heretofore constructed and is now operating 1357 such low-cost housing units. It is now constructing 704 such additional units. Those are in addition to the 5800 units now proposed to be constructed.

We also find that: The Intervenor has followed in respect to the planning for proposed low-rent and slum-clearance housing projects in the City of Kansas City, Missouri, the same course of action as has the plaintiff and has entered into preliminary arrangements and agreements with PHA. Pursuant thereto the latter will agree to lend to the Intervenor as a Housing Authority large sums of money to be used in connection with the acquisition and construction of proposed low-rent housing and slum-clearance projects to be located in Kansas City, Missouri. Such indebtedness is to be repaid upon approximately the same basis as above set out (as to plaintiff) and Intervenor has entered into a "Cooperation Agreement" with the City of Kansas City, Missouri, similar in context and legal aspect to the "Cooperation Agreement" of plaintiff with the City of St. Louis.

The "Cooperation Agreement" instantly at issue is too long a document to be here set out or even fully digested. It has been carefully examined. Briefly, it provides for cooperation between plaintiff and defendant in the construction and operation by plaintiff of the 5800

low-rent dwelling units; recites plaintiff's freedom from ad valorem taxes on those properties "so long as * * * such project is used for low-rent housing purposes" (See Bader Realty & Inv. Co. v. St. Louis Housing Authority, supra); provides "Payments in lieu of Taxes" from plaintiff to defendant of a percentage of the aggregate "Shelter Rent", and the manner in which defendant shall distribute same among the "Taxing Bodies" of the city; provides for elimination of a certain number of now existing "unsanitary dwelling units" or slums within the defendant city; provides defendant shall furnish public services such as fire, police and health protection, street repairs, storm and sanitary sewers, water systems, garbage disposal, street lighting, etc. It is also provided that defendant shall vacate certain public ways, if necessary in the development of the project, and will accept dedication of new streets, roads, alleys and sidewalks after plaintiff has graded, paved and completed the same to defendant's specifications. Such is the general tenor and effect of the Cooperation Agreement. Our attention has been called to no provision of the Cooperation Agreement, and close scrutiny of that contract reveals no [293] provision therein, which is not "within the scope of the powers" of either plaintiff or defendant, as limited by the Housing Authorities Law, by R. S. Mo. 1949, Sec. 70.220, or by the general law governing their powers to contract.

Under Section 16 of Article VI of our Constitution it is authorized that: "Any *municipality* or political subdivision of this state may contract and cooperate with other municipalities or political subdivisions thereof, or with other states or their municipalities or political subdivisions, or with the United States, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service, in the manner provided by law." (Emphasis ours.) Section 21 of that Article of our Constitution authorizes the enactment of laws and ordinances for the "clearance, replanning, reconstruction, redevelopment and rehabilitation of blighted, substandard or insanitary areas", etc.

Subsection (f) of Section 8 of the original Housing Authorities Law (Laws Mo. 1939, p. 494) which is now subsection 6 of Section 99.080 R. S. Mo. 1949, authorizes the authority "to cooperate with the city * * * in action taken in connection with such (housing) problems." After the 1945 Constitution became effective, in an obvious implementation of Sections 16 and 21 of Article VI of the Constitution, the General Assembly enacted Laws Mo. 1947, Vol. I, pages 401 to 404 (now 70.210 to 70.320 R. S. Mo. 1949). Section 70.220 thereof provides:

"Any *municipality* or political subdivision of this state, as herein defined, may contract and cooperate with any other municipality or political subdivision, or with an elective or appointive official thereof, or with a duly authorized agency of the

United States, or of this state, or with other states or their municipalities or political subdivisions for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; provided, that the subject and purposes of any such contract or cooperative action made and entered into by such municipality or political subdivision shall be *within the scope of the powers of such municipality* or political subdivisions. If such contract or cooperative action shall be entered into between a municipality or political subdivision and an elective or appointive official of another municipality or political subdivision, said contract or cooperative action must be approved by the governing body of the unit of government in which such elective or appointive official resides.'' (Emphasis ours)

This controversy is one of great public concern and importance. A determination of the constitutionality of the above statute is directly and necessarily involved and is essential to the declaration of the rights of the parties here. Juengel v. City of Glendale, (Mo. Sup.) 161 S. W. (2d) 408, State ex rel. McMonigle v. Spears, 358 Mo. 23, 213 S. W. (2d) 210. We think there can be no possible question of the constitutionality of Section 70.220, just above quoted. The title of the 1947 Act, containing that section, declares the Act relates ''to the power of municipalities or political subdivisions to contract and cooperate with other municipalities or political subdivisions * * * and providing for the manner in which * * * (they) may so contract or cooperate''. The 1947 Act further provides (Section 70.230) that the power granted may be exercised ''by ordinance duly enacted * * * or * * * by resolution of governing body * * * which shall provide the terms agreed upon by the contracting parties,'' etc. Other provisions of that 1947 Act are not here pertinent. That 1947 Act is a specific authorization of cooperation (under a constitutional mandate and for a salutary purpose) and was within power granted to the General Assembly in Section 16 of Article VI; and clearly it must be read in conjunction with the Housing Authorities Law. State ex rel. Faust v. Thomas, 313 Mo. 160, 282 S. W. 34.

Section 16 and Section 21 of Article VI are both new sections in our 1945 Constitution. There were no comparable or related sections in the 1875 Constitution. In Section 16 the Constitution provides that ''Any *municipality* or political [294] subdivision may contract,'' etc. In Section 21, concerning rehabilitation of blighted municipal areas, the Constitution uses the word ''city''. Section 16 is clearly related to Section 21. The former provides for ''the planning, development, construction, acquisition and operation of any public improvement'', etc. The slum-clearance low-cost housing projects of a housing authority ''exercising public and essential governmental

functions" are public improvements as contemplated by Section 16. Wilmington Housing Authority v. Fidelity and Deposit Co., (Del.) 41 Atl. (2d) 826, Laret Inv. Co. v. Dickmann, 345 Mo. 449, 134 S. W. (2d) 65, Bader Realty & Inv. Co. v. St. Louis Housing Authority, supra. Section 21 provides for "clearance, replanning, reconstruction, redevelopment and rehabilitation" of blighted areas. It is a matter of common knowledge that in 1944 and 1945 such rehabilitation problems existed and the framers of our Constitution and those who voted to adopt it took note of those conditions. The Constitution grants powers to alleviate those situations. Clearly the instant situation is one which was contemplated by the framers of the Constitution. That organic law confers powers under which plaintiff and defendant may act cooperatively to alleviate conditions in and to rehabilitate blighted areas.

Pursuant to the authority in that statute (Section 70.230) the plaintiff by resolution of its governing body and the defendant city by a duly enacted ordinance of its Board of Aldermen authorized the execution of the Cooperation Agreement and set out its terms. The Cooperation Agreement was thereafter executed. The city had express statutory authority to enact that ordinance (No. 45,182) and such ordinance was unquestionably valid.

Are plaintiff and defendant a "municipality" as contemplated and as that word is used in Section 16 of Article VI of the Constitution, and in Section 70.220 of our statutes, and, under the Constitution and the statute, were they authorized to execute the "Cooperation Agreement"? Both of those questions must be answered affirmatively.

Our Housing Authorities Act specifically provides (Section 99.080) that "An authority shall constitute a municipal corporation, exercising public and essential governmental functions" and shall have certain powers therein stated and defined. By the Housing Authorities Act plaintiff is authorized and empowered, as an arm of the local government, to cooperate with and borrow money from agencies of the Federal government; but by statute plaintiff cannot operate for profit to itself or to defendant. In Laret Inv. Co. v. Dickmann, supra, we held that this plaintiff is in fact a "municipal corporation", that its declared purposes under our statute were in fact public purposes and that its functions in fact were essentially governmental. Being a non-profit "municipal corporation", with public purposes and governmental functions is plaintiff also a "municipality" as that word is used in our Constitution and statutes?

A "municipal corporation" is commonly called a "municipality". 62 C. J. S. Municipal Corporations, p. 64, State ex rel. Koontz v. Board of Park Commissioners, (W. Va.) 47 S. E. (2d) 689, 694. By both judicial recognition and common usage "municipality" is a modern synonym of "municipal corporation". "Municipality" is all embracing. It includes, of course, cities of all classes, as well as

towns, but it includes also a non-profit agency, such as plaintiff, which is authorized to exercise public and essential governmental functions. By the General Assembly plaintiff's status is declared to be a municipal corporation exercising public and essential government functions. Webster's New International Dictionary, 2nd Ed., defines municipality as a municipal corporation. The suffix "ity" denotes state, or condition of being. Thus municipality connotes the state or condition of being municipal in nature. The word "municipal" is derived from the latin "municipalis", and implies the right of local self government. Municipality now has a broader meaning than "city" or "town", and presently includes bodies public or essentially governmental in character and function and distinguishes public bodies, such as plaintiff, from corporations only quasi-public in nature. [295] 42 C. J. p. 1413, Curry v. Sioux City Dist. Tp., 62 Ia. 102, 17 N. W. 191. But the two terms (municipality and municipal corporation) are often interchangeably used. Likewise, "municipal corporation", in the broader sense now includes public corporations created to perform an essential public service and "is applied to any public local corporation exercising some function of government". "Municipal corporation" now also includes a corporation created principally as an instrumentality of the state but not for the purpose of regulating the internal local and special affairs of a compact community. Columbia Irr. Dist. v. Benton County, (Wash.) 270 Pac. 813, 62 C. J. S. Munic. Corp. p. 76. State ex rel. Caldwell v. Little River Drainage District, 291 Mo. 72, 1. c 79, 236 S W. 15, Laret Inv Co. v. Dickmann, supra, Dillon on Munic. Corp. 5th Ed. Sec. 32. Under the instant circumstances we are constrained to rule that both plaintiff and defendant are a "municipality" as contemplated and used in Section 16 of Article VI of our Constitution and in R. S. Mo. 1949, Sec. 70.220. Both are likewise a "municipal corporation". Under the above considered sections plaintiff and defendant clearly possess the constitutional and statutory authority to execute the instant Cooperation Agreement.

In view of our findings, conclusions and rulings above, we approve and affirm the following numbered paragraphs of the trial court's findings, judgment, and declarations, to-wit, the 2nd, 3rd, 4th, 5th, 6th, 7th and 12th. Those matters presented in those findings and declarations we have discussed above in the 4th, 5th, 6th, 7th and 8th paragraphs of this opinion, wherein we have also made affirmative findings with respect thereto. The following numbered paragraphs of the trial court's judgment, decree and declarations are set aside, to-wit, the 1st, 8th, 9th, 10th and 11th.

In view of our above conclusions and rulings we further make the following findings, judgments and declarations:

1. For reasons hereinabove set out this court finds and declares that both the plaintiff and the defendant are a "municipality" as

that term is used and appears in Section 16 of Article VI of the Constitution of Missouri, and in R. S. Mo. 1949, Sections 70.210 and 70.220.

2. For reasons hereinabove set out this court finds and declares' that R. S. Mo. 1949, Sections 70.210 and 70.220, in the respects hereinabove considered, are constitutional.

3. For reasons hereinabove set out this court finds and declares that Ordinance No. 45182 enacted by the Board of Aldermen of the City of St. Louis on January 9, 1950, in the respects hereinabove considered, is a valid and binding Ordinance.

4. This court finds and declares that plaintiff and the Intervenor, organized under the Housing Authorities Law, are exercising public and essential governmental functions in the State of Missouri.

5. For reasons hereinabove set out this court finds and declares that plaintiff, St. Louis Housing Authority, and defendant, the City of St. Louis, had and have the constitutional and statutory authority to enter into and execute the instant Cooperation Agreement mentioned in the petition and attached thereto as an exhibit.

6. For reasons hereinabove set out, this court finds and declares that Intervenor, Housing Authority of Kansas City, and the City of Kansas City had and have the constitutional and statutory authority to enter into and execute a Cooperation Agreement, similar in context and of the same legal effect as that heretofore executed by plaintiff and defendant herein.

7. For reasons hereinabove set out this court finds and declares that the Cooperation Agreement heretofore executed by plaintiff and defendant is a binding and valid contract and legally commits plaintiff and defendant to the terms and conditions therein set forth.

The judgment, decree and declarations of the circuit court of the City of St. Louis instantly appealed from are therefore affirmed in part and reversed in part, as hereinabove set out and indicated; and the rights of the parties hereto are declared as herein stated. It is so ordered. All concur.