**Raymond HUNT, Appellant,**

v.

**ST. LOUIS HOUSING AUTHORITY, a Municipal Corporation, Respondent.**

**No. 39411.**

Missouri Court of Appeals, St. Louis District, Division Two.

Oct. 31, 1978.

Michael U. Bastian, Legal Aid Society, St. Louis, for appellant.

Edward C. Cody, Klutho, Cody & Kilo Attorneys, Inc., Warren W. Friedman, St. Louis, for respondent.

STEPHAN, Judge.

This is an appeal from an order sustaining defendant's motion to dismiss plaintiff's petition, which sought actual and punitive damages under § 290.140, RSMo 1969, Missouri's "service letter statute". Plaintiff's petition alleged that he had been an employee of defendant St. Louis Housing Authority, that upon his discharge he request-

ed a service letter pursuant to the statute, that the letter issued to him by defendant failed to state the true reason for his dismissal and that such failure prevented him from obtaining similar employment and thereby caused him great mental and emotional distress. As noted, defendant's motion to dismiss this petition was sustained, on the grounds that § 290.140 does not permit a service letter suit to be brought against a municipal corporation.

■ Section 290.140 provides that:

"Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor, and shall be punished by a fine in any sum not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding one year, or by both such fine and imprisonment."

Although the statute recites criminal sanctions for its violation, it was recognized early that it created a civil cause of action in favor of an employee entitled to its protections and injured by its breach. When the statutory violation is accompanied by legal malice, the employee may obtain punitive as well as actual damages. *Cheek v. Prudential Ins. Co. of America*, 192 S.W. 387, 390 (Mo.1917). See also *Cheek v. Pru-*

*dential Ins. Co. of America,* 223 S.W. 754, 756 (Mo.App.1920).[1]

The threshold question which we address is whether the defendant St. Louis Housing Authority is a "corporation doing business in this state" as that term is used in the statute. For reasons hereinafter stated, we have concluded it is not and affirm the judgment of the trial court.

Defendant St. Louis Housing Authority was created in 1939 by the Housing Authorities Law, now §§ 99.010 to 99.230, RSMo 1969.[2] The purpose of the Authority is to clear and rehabilitate areas of substandard housing by planning and developing subsidized housing projects for low-income families, §§ 99.030 and 99.080. Such projects are not to compete with private enterprise, § 99.030, nor may they be constructed or operated for profit or as a source of revenue, § 99.090. By legislative declaration and judicial definition, defendant constitutes a municipal corporation as that term is used in its broader sense to include public and quasi-corporations which act as arms of local government and exercise essential governmental functions. Section 99.080 and *Laret Investment Co. v. Dickmann,* 345 Mo. 449, 134 S.W.2d 65, 68 (banc 1939). See also *State ex rel. Housing Authority of St. Louis County v. Wind,* 337 S.W.2d 554, 557 [1] (Mo.App.1960). The Missouri Supreme Court, in *St. Louis Housing Authority v. City of St. Louis,* 361 Mo. 1170, 239 S.W.2d 289 (banc 1951), practically erased the distinction between the terms "municipality" and "municipal corporation", as applied to defendant, by holding defendant a municipality within the meaning of a statute which authorized municipalities and other political subdivisions of the state to cooperate with one another for public improvements. The court there stated that:

"By both judicial recognition and common usage 'municipality' is a modern synonym of 'municipal corporation'. 'Municipality' is all embracing. It includes, of course, cities of all classes, as well as towns, but it includes also a non-profit agency, such as plaintiff, which is authorized to exercise public and essential governmental functions."

\*　　\*　　\*　　\*　　\*　　\*

"Municipality now has a broader meaning than 'city' or 'town', and presently includes bodies public or essentially governmental in character and function and distinguishes public bodies, such as plaintiff, from corporations only quasi-public in nature. . . . But the two terms (municipality and municipal corporation) are often interchangeably used." Id. 294–295.

In this view, a municipal corporation such as defendant is simply a branch or department of the local government which created it.

Our Constitution and statutes consistently recognize the difference between private business corporations and municipal corporations. We have found no instance—and plaintiff has cited us to none—where the word "corporation" alone in a constitutional provision or in a statute is clearly intended to refer to, or include, a municipal corporation. Indeed, it has been judicially noted that a "well settled distinction exists between the two" terms. *In re East Park Dist. of Kansas City,* 361 Mo. 829, 237 S.W. 2d 118, 120 (banc 1951). In *City of Webster Groves v. Smith,* 340 Mo. 798, 102 S.W.2d 618 (1937), the court was called upon to determine whether a statute imposing an

1. Other stages of this litigation are reported as follows: *Cheek v. Prudential Ins. Co. of America,* 209 S.W. 928 (Mo.1919); *Prudential Insurance Company of America v. Cheek,* 252 U.S. 567, 40 S.Ct. 343, 64 L.Ed. 719 (1920); and *Prudential Insurance Company of America v. Cheek,* 259 U.S. 530, 42 S.Ct. 516, 66 L.Ed. 1044 (1922).

2. As originally enacted, the "Housing Authorities Law" created such municipal corporations only in cities and counties having a population of 600,000 or more and provided that such authorities were not to exercise the powers granted to them until the proper local governing body declared the need for the authority within its boundaries. Laws 1939, p. 488. Subsequently, the population requirement for cities was reduced to 5,000, Laws 1941, p. 455. The requirement was ultimately removed entirely so as to permit housing authorities in "any city, town or village in the state." Laws 1963, p. 156; § 99.020(4), RSMo.

excise tax on corporations selling water service included the plaintiff city in its purview. In holding the statute inapplicable to a municipal corporation, the court used language which we consider dispositive of the issue at hand, and we quote at some length from pages 619 and 620:

"In definition and legal classification and terminology a well-settled distinction exists, and is recognized generally, between a 'corporation' and a 'municipal corporation.' Each term has a distinct and commonly accepted meaning. . . . Municipalities are variously referred to in our Constitution as cities or towns and municipal corporations. 'In common parlance, towns, cities and other municipal organizations are not known as corporations.' . . . Reverting to statutory language in this state, the term 'corporation' is used and refers to private and business corporations and the statutes relating to such corporations are assembled under the designation or classification of 'corporations.' . . . Likewise where the term 'corporation' is used in our Constitution it uniformly refers to private or business organizations of individuals. Neither by the language of the Constitution nor statutes is the term 'corporation' so used as to apply to and include a municipality or municipal corporation and where a city or town is referred to, in the sense of being a corporate entity, the term 'municipal corporation' is used. . . . In view of the foregoing considerations, the meaning commonly ascribed to the word 'corporation' both in popular usage and legal nomenclature and absence of language indicating a legislative intent to use it in a different sense we must assume it was used in its ordinary and commonly understood meaning and the assumption legitimately follows that had the Legislature intended to include a municipality in the act it would have done so by specific language to that effect. It is our conclusion that the word 'corporation' as used does not include a municipality and therefore a municipality is not within the act."

Our examination of current constitutional provisions and statutes reveals no change in the "meaning commonly ascribed" to the terms in question.

Seeking a conclusion contrary to that reached here, plaintiff relies primarily on several statements in *Cheek v. Prudential Ins. Co.*, 192 S.W. 387, 391, 392 (Mo.1917) to the effect that the service letter statute applies to "all corporations" doing business in the state. From these references, plaintiff argues that municipal corporations are necessarily included. We do not so read that case. The language relied on by plaintiff was addressed to the argument made by the defendant therein, a foreign insurance corporation, that the statute was discriminatory class legislation. The court merely underscored the uniform applicability of the statute as among business corporations. Applicability to a municipal corporation was not an issue in *Cheek*, and we do not regard that case as instructive in this situation.

■ For the reasons previously stated, we hold that the defendant St. Louis Housing Authority is a municipality and, as such, not bound by § 290.140 to issue "service letters" as contemplated by that statute.

The judgment is affirmed.

STEWART, P. J., and REINHARD, J., concur.