753 F.2d 847
 BOSSIER BANK AND TRUST COMPANY, a Louisiana banking
corporation, as Trustee for Westside Habilitation
Center, a Louisiana not-for-profit
charitable corporation,
Plaintiff-Appellant,
Fidelity Bank, National Association, a national banking
association, Plaintiff-in-Intervention,
v.
The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of
the Penn Square Bank, National Association, a national
banking association (in liquidation), Westside Habilitation
Center, Inc., a Louisiana not-for-profit corporation
domiciled in Rapids Parish, Louisiana, Joe Fryar, an
individual residing in Louisiana, Swink & Co., an Arkansas
corporation, Rapides Management Corporation, a Louisiana
corporation, Town of Cheneyville, a Louisiana municipality,
Defendants-Appellees.
 No. 83-1992.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 25, 1985.
 
 Arnold D. Fagin and J. Steven Rogers of Fagin, Hewett, Mathews & Fagin, Oklahoma City, Okl., Lewis G. Odom, Jr. and George A. LeMaistre, Jr. of Miller, Hamilton, Snider & Odom, Mobile, Ala., for plaintiff-appellant.
 Norman E. Reynolds of Reynolds, Ridings & Hargis, Oklahoma City, Okl., Thomas A. Brooks, Gen. Counsel, Kathy A. Johnson, Atty., Federal Deposit Ins. Corp., Washington, D.C., for defendants-appellees.
 Before BARRETT, SETH and McKAY, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 Appellant Bossier Bank & Trust Company (Bossier Bank) as trustee for Westside Habilitation Center (Westside) appeals the trial court's grant of summary judgment to appellee Federal Deposit Insurance Corporation (F.D.I.C.). In the lower court action, Bossier, on behalf of Westside, sought the return of property which secured Westside's deposit with Penn Square Bank of Oklahoma (Penn Square). The Comptroller of the Currency declared Penn Square insolvent on July 5, 1982 and appointed the F.D.I.C. as receiver. The only issue on appeal is whether Westside's secured deposit is authorized by 12 U.S.C. Sec. 90.
 
 
 2
 Westside is a Louisiana nonprofit corporation formed in 1979 primarily for the purpose of constructing and operating an intermediate care center for the mentally retarded. The Center was to be located in Cheneyville, Louisiana. From the date of incorporation Westside's Articles reflected a charitable purpose benefiting the residents of Cheneyville (Article II(b)) and provisions for the irrevocable transfer of the Center to Cheneyville on dissolution of the corporation (Article II, Article X, Article XIV, Article XV). On March 23, 1982 the Town of Cheneyville passed a resolution which basically approved Westside's Articles of Incorporation, and the issuance of tax-exempt bonds (qualifying for I.R.C. Sec. 103(a) exemption) on behalf of the Town in order to finance the Center. The resolution provided, however, that the bond obligation "would not be a debt ... o[f] the Town." An opinion letter to the bond offerors and the official bond offering statement also clearly expressed the understanding between the bond issuer and the Town of Cheneyville:
 
 
 3
 "The issuance of the Bonds does not directly or indirectly obligate the State or any political subdivision thereof to provide any funds for their payment. Neither the State nor any political subdivision thereof shall in any manner be liable for the performance of any agreement or pledge of any kind which may be undertaken by the Corporation, nor shall any breach thereof by the Corporation create any obligation upon the State or any political subdivision thereof. The Corporation has no taxing power."
 
 
 4
 (Record Vol. II, at 435.) Westside amended Article I, Section 3, of its By-laws to give the Town Council of Cheneyville the power to elect"two (2) members of the Board of Directors or one-half of the Directors to be elected, whichever is the greater number...."
 
 
 5
 (Record Vol. II, Ex. "1", at 401.) The Articles at the time provided for a three member board of directors.
 
 
 6
 Bossier and Westside entered a trust indenture. Westside promised Bossier that it would "not amend its Articles of Incorporation or By-laws without the approval of the Town and agrees that all directors of the Issuer [Westside] shall be subject to approval and removal by the Town." (Record Vol. IV, Ex. 1, Section 722.) The relative position of the Town of Cheneyville to the corporation is then that the Town approved issuance of bonds on its behalf for the construction of the Center without accepting any obligation, following that approval the current board of Westside decided to grant the Town power to elect some future directors, and in a separate agreement with its trustee Westside (the corporation) promised to gain the Town's approval of any future changes in its Articles or By-laws.
 
 
 7
 Bossier entered the agreement with Penn Square on April 8, 1982 promising to deposit with Penn Square $8,000,000 in bond revenues. In return Penn Square agreed to secure this deposit. The bonds were issued on April 20, 1982 and $8,704,517.09 (out of $13,550,000) of the proceeds wired to Penn Square for deposit.
 
 
 8
 Pre-1950 Section 90 of the National Banking Act (12 U.S.C. Sec. 90) used the term "public money" to classify deposits which could be secured. These deposits of "public money" could be a deposit of any entity. The 1950 Amendment to Section 90 changed the test. Instead the depositors were classified instead of the "money." Thus funds could be secured if deposited by states, subdivisions of states, governmental instrumentalities or agencies.
 
 
 9
 Under Section 90 as amended there was a second qualification to be met. By the reference to what state law authorizes state banks to do, the governmental instrumentality depositor could be secured only to the "extent" and "of the same kind" that Oklahoma law authorizes state banks to be secured. Thus for the particular deposit to be secured the depositor under Section 90 must be a "governmental instrumentality" and also be one the deposit of which could be secured under state law had it been made in a state bank.
 
 
 10
 The construction and application of Section 90 in the determination whether the depositor is a "governmental instrumentality" is a federal question. As to the second qualification the examination of the nature and extent of the security arrangement, and what governmental instrumentalities may have their deposits secured, requires an examination of Oklahoma law to determine the "extent" and "of the same kind" as is authorized by state law for state banks, and then apply Section 90.
 
 
 11
 As to the "governmental instrumentality" issue, national banks are as a general proposition not permitted to pledge assets to secure particular deposits because to do so would be contrary to the basic requirement that on liquidation there must be a ratable distribution so that the depositors be treated equally. Texas & Pacific Railway Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777. There was the "public funds" exception as mentioned to the rule before the 1950 change in Section 90 with the change to center on who the depositor was, it was still intended that national banks be able to compete with state banks in obtaining deposits from states, their political subdivisions, state agencies and governmental agencies. In view of the sensitive nature of any exception to the basic rule, the change in wording to identify the depositor demonstrates no intention to broaden the exception.
 
 
 12
 There appears to be little if any federal case law to identify or to provide a test to determine whether Westside was a governmental instrumentality under Section 90. There are a number of state cases on similar subjects. The state cases for the most part consider entities which were created by a particular statute, for example the Lower Colorado River Authority. (Lower Colorado River Authority v. Chemical Bank & Trust, 185 S.W.2d 461 (Tex.Civ.App.), aff'd 144 Tex. 326, 190 S.W.2d 48). St. Louis Housing Authority v. City of St. Louis, 361 Mo. 1170, 239 S.W.2d 289. See also Morse v. United States, 443 F.2d 1185, 195 Ct.Cl. 1.
 
 
 13
 The state authorities as to hospitals also hold that the city or county must have direct control of the operations and itself by its agents exercise the management thereof to make the hospital have a public status. Jewish Hospital of Brooklyn v. Doe, 252 App.Div. 581, 300 N.Y.S. 1111; Edson v. Griffin Hospital, 21 Conn.Sup. 55, 144 A.2d 341; Ponca City Hospital v. Murphree, 545 P.2d 738 (Okla.). A general public purpose is not enough nor is the care for the handicapped in this instance enough to make Westside a governmental instrumentality.
 
 
 14
 It must be concluded that Westside was organized as a nonprofit corporation under Louisiana law and the Town of Cheneyville approved the bond issue so that the proposed bonds would qualify as tax-exempt. The trial court found that the Town's participation (as to the bonds and the hospital) was restricted to what was essential to enable the bonds to be tax-exempt. The Town had no liability on the bonds nor for any debts of the Board nor for the performance of any of its obligations.
 
 
 15
 The trial court found that the Town had authority under the amended Articles of Westside to have a say in the formation of the board, and as to further amendments to the Articles. The Court also concluded that this did not give the Town control over the board. The industrial development corporation was a separate private entity, and the Town had no control over its operations or its management. The hospital itself was to be operated by a private for profit corporation under a contract with Westside.
 
 
 16
 Westside qualified under Revenue Ruling 63-20 but this demonstrates that it had met the several requirements placed on nonprofit corporations before they can issue tax-exempt bonds. This category is a separate one and is distinguished from corporate governmental agencies or public corporations organized under special statutes which need not meet the five requirements to have tax-exempt status. Westside's qualification demonstrates that it was considered to be no more than a private corporation not for profit which could issue industrial revenue bonds. In this instance we are concerned with an Oklahoma statute which, as in most states, starts with the proposition that state banks are not permitted to secure deposits by a pledge of bank assets. Okla.Stat.Ann. tit. 6, Sec. 809 (West), has such a prohibition. Section 411, however, provides that security may be provided if the depositor "is required to obtain such security" by the laws of any state. Thus it is urged that the laws of Louisiana require this depositor--Westside--to have its deposit secured because it is a "local depositing authority." (La.Rev.Stat.Ann. Sec. 39:1221) (West).
 
 
 17
 We cannot conclude that Westside is such an authority under Louisiana law because it exercises no governmental authority. It is not a "public body" under the statute. The statute names the particular "authorities" such as "tax collectors, judges, clerks of court, and any other public bodies." The usual rules of construction would lead to the conclusion that "other public bodies" must be like the particular officials named. This is the conclusion reached by the trial court and we agree. The same result is reached when the several statutory provisions as to deposits are read together.
 
 
 18
 It must be concluded that Westside is not a governmental instrumentality and is not an entity the deposit of which would be secured under Oklahoma law.
 
 
 19
 AFFIRMED.