YOUNGSTOWN METROPOLITAN HOUSING AUTHORITY,
Plaintiff-Appellee, v. ST. STEPHEN'S CLUB,
Defendant-Appellant.
ST. STEPHEN'S CLUB, Plaintiff-Appellant, v. YOUNGSTOWN
METROPOLITAN HOUSING AUTHORITY, Defendant-Appellee.

Ohio Appeals, Seventh District, Mahoning County.

Nos. 3569, 3572.    Decided December 31, 1952.

C. F. Hammon, C. J. Hoyt, Youngstown, for Youngstown Metropolitan Housing Authority.

Manchester, Bennett, Powers & Ullman, Youngstown, for St. Stephen's Club.

(SKEEL, PJ, HURD, J, KOVACHY, J, of the 8th Appellate District sitting by designation in the 7th Appellate District.)

## OPINION

By HURD, J:

These cases here appealed on questions of law originated in the Common Pleas Court of Mahoning County. Because the actions are between the same parties and the questions presented are identical, the cases are considered together.

In Case No. 3569, Youngstown Metropolian Housing Authority, hereinafter designated as the Authority, petitioned to have a jury empanelled to assess compensation for the land which it desired to appropriate from St. Stephen's Club, hereinafter designated as the Club. In that suit, the Club sought to contest the right of the Authority to appropriate the land under the power of eminent domain.

In Case No. 3572, the Club filed its petition praying for an order permanently enjoining the Authority from proceeding with the appropriation proceedings on the ground primarily that the Authority had not the right to appropriate its property because the use to which it purported to put said property is not a public use, under **Article I, Sec. 19 of the Constitution of Ohio.** The injunction case was submitted on an agreed statement of facts which is part of the record herein, it being stipulated therein that a transcript of the testimony taken upon the application to empanel a jury in the appropriation case shall also be made a part of the record. In each case, the trial court found in favor of the Authority, holding the Ohio State Housing Law to be a valid, constitutional enactment and that the Authority had the right to appropriate land of the Club for the uses stated. The injunction prayed for against the Authority in the appropriation proceedings was denied, but the trial court granted a limited injunction, refusing the Authority permission to pay for or take possession of the land until the provisions of the cooperation agreement had been complied with in respect of re-zoning the land for multiple residence purposes.

Pertinent parts of the Agreed Statement of Facts are as follows:

The Youngstown Metropolitan Housing Authority does operate and intends to operate the housing project being located on the land to be appropriated in accordance with the United

States Housing Act of 1937 as amended. That said Act defines "low rent housing" in Section 2 thereof, as follows:

"Sec. 2. When used in this Act—

"The term 'low-rent housing' means decent, safe and sanitary dwellings, within the financial reach of families of low income, and developed and administered to promote serviceability, efficiency, economy and stability and embraces all necessary appurtenances thereto. The dwellings in low-rent housing as defined in this Act shall be available solely for families whose net income at the time of admission does not exceed five times the rental (including the value or cost to them of heat, light, water and cooking fuel) of the dwellings to be furnished such families, except that in the case of families with three or more minor dependents, such ratio shall not exceed six to one."

That the Annual Contributions Contract which has been drawn by the Director of the Chicago Field Office of the Public Housing Administration, has been submitted to, approved and executed by Youngstown Metropolitan Housing Authority as of November 25, 1952, and has been approved by the Director of the Chicago Field Office of the Public Housing Administration, and is the contract under which the project referred to as Ohio 2-3 will operate.

The ordinance authorizing execution of the cooperation agreement and the cooperation agreement, are exhibits herein. The Annual Contributions Contract and the Resolution of the Authority authorizing the execution of the Annual Contributions Contract, and a copy of the development program adopted by the Authority are exhibits herein.

The Authority was organized under the State Housing Authority Law, §§1078-29 to 1078-50 GC.

In the appropriation case, it was decreed that all the preliminary steps entitling the Authority to have a jury assess compensation under the provisions of the Code has been duly complied with and that the Authority had the right to appropriate the land described in the petition.

The St. Stephen's Club is a non-profit organization and a corporation, and the owner of land sought to be appropriated; that it is part of Youngstown Out-lot No. 1343 consisting of approximately eighteen acres located in the vicinity of Albert and Victor Streets on the east side of Youngstown; that it is now zoned as Residential A and the project which the Authority seeks to erect upon said land would require re-zoning to Residential B.

It is stipulated that the property in question is not a slum area and is vacant land without any buildings whatsoever and

that the Authority has submitted to the zoning commission plans and other data for the advice of the commission as provided by §1078-43 GC.

It is further stipulated that the Housing Authority presented to the Planning Director, who represents the City Planning Commission, a complete lay-out or site plan, showing the street lay-out, the location of the buildings, existing streets, existing utilities, proposed streets and proposed utilities for the advice of the City Planning Commission; and the Director of that Commission in turn referred the data to the City Engineer, who advised the Housing Authority as to what to do about the width of certain streets and other matters. This was done prior to September 12, 1952.

It is further stipulated that a copy of the entry made upon the hearing in the appropriation case, and all exhibits referred to in the agreed statement of facts, shall be received in evidence and become part of the record herein.

Two grounds of error are assigned, as follows:

1. Assuming that the question was properly before the court in the appropriation case, the court erred in finding that the housing authority had the right to appropriate the club's land, and in permitting the trial for the assessment of compensation to proceed.

2. The court in the injunction suit erred in finding that the housing authority had the right to appropriate the club's land and in refusing to enjoin the housing authority from proceeding with the trial for the assessment of compensation.

Thus, there is presented the broad question of the right of a housing authority to exercise the power of eminent domain and to appropriate land for the purpose of erecting a housing project for families in low income brackets in general conformity with the purpose and design of the controlling legislation.

Considering the first assignment of error concerning the issues raised in the appropriation case, we are of the opinion that inasmuch as it was conceded by the Club that all the preliminary steps as to resolution of intent, resolution of appropriation, publication and notice to owners had been duly complied with, the only issue presented was the assessment of compensation and damages. We reach this conclusion on the authority of **Emery v. City of Toledo, 121 Oh St 257; Sargeant v. City of Cincinnati, 110 Oh St 444; C. C. & St. L. Railroad v. City of Greenville, 69 Oh St 487.** See also: City of Cincinnati v. Vester, 281 U. S. 439; Sears v. City of Akron, 246 U. S. 262; **Jones v. Village of Maumee, 20 Oh Ap 255; Shepard Paint Co. v. Trustees, 88 Oh Ap 319; 15 O. Jur. 998, Sec. 334.**

It is our opinion, however, that although the Club was erroneously permitted to contest the right to appropriate in an appropriation suit, it is not thereby barred by the doctrine of election of remedies from prosecuting the injunction suit and from consideration of its appeal in that action by this court.

This brings us to a consideration of the second assignment of error concerning the issues raised in the injunction suit.

**Article I, Sec. 19 of the Constitution of Ohio** provides in part:

"Private property shall ever be held inviolate, but sub-servient, to the public welfare" * * * "and where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money and such compensation shall be assessed by a jury * * *."

Sec. 1078-34a GC provides:

"A housing authority shall have **special power to appropriate, enter upon and hold real estate within its territorial limits,** and such authority is hereby authorized to acquire the fee simple title * * * in any property within its territorial limits which it shall deem necessary to appropriate for the purpose of the housing authority. Such power shall be exercised by a housing authority in the manner provided for appropriation proceedings by municipal corporations." (Emphasis added.)

At the outset it should be observed that the appellant does not here challenge the constitutionality of the entire housing authority law, §1078-29 through 1078-61a GC, conceding by their brief that "the supreme court in the case of **State ex rel Ellis v. Sherrill, 136 Oh St 328,** at least inferentially upheld the act when considered as a whole." However, it selects from the entire act for attack, §1074-34a GC quoted, supra, on the ground that the statute attempts to authorize the taking of private property by eminent domain for a private use, in violation of **Art. I, Sec. 19 of the Ohio Constitution.** In support of its argument, the appellant cites and quotes from **Dayton Housing Authority v. Evatt, 143 Oh St 10; Columbus Metropolitan Housing Authority v. Thatcher, 140 Oh St 38; In re Cincinnati Housing Authority, 155 Oh St 590.** In all of these cases, the attention of the Supreme Court was centered upon one issue only, and that was whether property of Housing Authorities are "public property" "used exclusively for a public purpose," and as such, exempt from taxation under **Section 2 of Article XII of the State Constitution.**

In the Columbus case, decided 1940, and in the Dayton case, decided 1944, with two judges dissenting, the Supreme Court upheld the Board of Tax Appeals in denying applications for

exemption. In the Cincinnati case, decided June 20, 1951, the issue was changed by reason of the amendments of §§5356 and 1078-36 GC, effective Oct. 6, 1949, declaring property of Housing Authorities to be public property and exempt from taxation. In that case, the Board of Tax Appeals had granted an application for exemption from taxation of the Cincinnati Housing Authority and while five judges expressed the opinion that the decision of the Board of Tax Appeals should be reversed on the ground stated that the property in question is not "public property used exclusively for any public purpose," two judges of the court did not concur in that view. Therefore, five members of the Supreme Court not being sufficient to declare §5356 and §1078-36 GC unconstitutional, the decision of the Board of Tax Appeals was affirmed and the real property of the Housing Authority in question was held to be exempt from taxation.

We have reviewed these cases at some length, only because counsel for appellant indicate a strong reliance upon the dicta of these cases, with special emphasis upon the Dayton case. By reason of the latest pronouncement of the Supreme Court in the Cincinnati case (155 Oh St 590) we think the force of the argument is largely dissipated. But it is our considered opinion that these tax exemption cases, so strongly relied upon, have no application to the issues in the cases here under review.

From time immemorial, sovereign states have jealously guarded rights of taxation in order to furnish revenue for support of government. In this respect Ohio has been no exception. In its constitutional provisions, its legislative enactments, and its judicial decisions, the taxing power is carefully established and strictly construed against exemption and in favor of taxation for the purpose of protecting the sovereign power of the State in the field of taxation. Hence, it is that the Supreme Court has strictly construed tax exemption statutes.

"The fact remains, however, that it is the theory of government that all property should bear its equal share of the cost and expense of government, and, since the law does not favor exemption of property from taxation, before particular property can be exempt it must clearly fall within the class of property authorized to be exempt by the Constitution. Again, since the sole power to exempt from taxation is vested in the general assembly, except as the Constitution itself makes certain exemptions, and it has provided for the taxing of all property, 'except only such property as may be expressly exempted' the accepted rule is that an exemption cannot be

presumed, or implied, and read into a statute, or, stated conversely, to have an effective exemption, it must be expressed in clear and unmistakable terms or at least with reasonable certainty as the laws relating to exemption from taxation, being in derogation of equal rights, are strictly construed as against such exemption and in favor of the taxing authorities." **38 O. Jur., Taxation, Sec. 114, page 852,** and numerous cases therein noted.

We think that tax exemption cases must be clearly distinguished from appropriation cases. Despite the dicta which at times may have been used in discussing tax exemption statutes, in relation to property of public housing authorities, no such language has been used in respect of the power of eminent domain. While public bodies, such as the State, and various subdivisions thereof, frequently appropriate under the power of eminent domain, for an exclusively public use, such public use purpose is not always required as a condition of the exercise of rights of eminent domain. We need only point to public utilities such as light, power, communications and transportation companies as examples where the right of eminent domain is conferred and where the service to the public results in private profit to stockholders and bondholders. Hence, it is clear that the Constitution does not require, as a condition precedent, that all property taken by the conferred right of eminent domain shall be exclusively for public use. In our opinion, the case of State ex rel Ellis v. Sherrill, supra, is presently dispositive of the issues here presented. That was an original action in mandamus where the city manager was directed by the court to execute a cooperation agreement with the Cincinnati Housing Authority, similar to the agreement in evidence in this case. Thus, the Supreme Court must have found that there was a clear duty devolving upon the city manager, a ministerial officer, to execute the agreement although he had failed to do so because of an "expressed doubt as to the validity of the action of the city council and of the constitutionality under which the council purported to act."

The court in disposing of the case on the merits, observed that they could not be concerned with the wisdom or policy displayed by the Congress in enacting the Federal Housing Act and concluded with a statement which appears to be all-embracing, leaving no room to doubt the constitutionality of any of its provisions, as follows:

"Since the passage of the United States Housing Act, followed by necessary and appropriate enactments in different states to take advantage of the national bounty, frequent attacks have been made upon this legislation, and the steps

taken thereunder as to constitutionality and on almost every other conceivable ground. Such legislation and the ensuing activities have been upheld generally by the courts, as is shown by the following representative cases recently decided: Housing Authority of County of Los Angles v. Dockweiler (Cal. Sup.) 94 P. 2d. 794; Laret Inv. Co. v. Dickmann (Mo. Sup.) 134 S. W. 2d. 65; Matthaei v. Housing Auth. of Baltimore (Md. App.) 9 A 2d. 835; Allydonn Realty Co. v. Holyoke Housing Auth. (Mass Sup.) 23 N. E. 2d. 665; Stockus v. Boston Housing Auth. (Mass. Sup.) 24 N. E. 2d. 333; In re Brewster St. Housing Site in City of Detroit (Mich. Sup.) 289 N. E. 493; Romano v. Housing Auth. of City of Newark (N. J. Sup.) 10 A. 2d. 181; Chapman v. Huntington W. Va. Housing Auth. (W. Va. Sup. Ct. App.) 3 S. E. 2d 502. The writ as prayed for will issue."

In **Blakemore v. Cincinnati Metropolitan Housing Authority, 74 Oh Ap 5,** the Court of Appeals of the First District upheld the power of the housing authority to appropriate property by denying injunction brought by a property owner, on the ground that it was not for a public use, and violated the due process clause of the Federal Constitution. To the same effect is **Kathman v. Cincinnati Metropolitan Housing Authority, 13 O. O. 369.** In these cases the Court of Appeals and the Common Pleas Court recognized the authority of State ex rel Ellis v. Sherrill, supra. Neither of these cases were appealed. We find nothing contra in Ohio.

We hold therefore that §1078-34a GC, conferring the power of eminent domain upon metropolitan housing authorities is a valid constitutional enactment in the interests of the "public welfare."

It remains only to determine if the plan formulated by the Mahoning Authority comes within the purview of the Housing Act, both State and National, and whether the judgment and discretion of the Authority is being reasonably exercised within lawful limits.

The record shows that the Authority purposes to erect on the land in question a housing project consisting of 304 dwelling units for the express purpose of providing sanitary housing conditions for families of low income and thereby to provide for the preservation of public health, morals, safety and welfare of the citizens of the community.

The Public Housing Administration has agreed to loan to the Authority approximately $3,500,000.00 to be secured by bonds to be issued upon the property of the Authority. The cooperation agreement entered into between the City of Youngstown and the Authority, duly authorized by ordinance of the City Council, as an emergency measure, provides for

the service of the project by the usual utilities furnished by the city and that the city cooperate in rezoning the territory so that the project may be erected with multiple dwelling units. The cooperation agreement further provides for the demolition by the city of an equal number of sub-standard dwelling units which will result in the elimination of congested and unsanitary housing conditions now existing in certain slum areas within the territory of the Authority which meets the requirements of the housing act in two principal purposes (1) the eradication of so-called slum areas "injurious to the health, safety and morals of the citizens of the nation" and (2) as a concomitant thereof the furnishing of low rent dwellings to families of low income.

The record shows that all necessary conditions precedent have been complied with, and it was conceded in the appropriation case that the Authority had taken all the preliminary steps as a prerequisite to filing the appropriation action.

We must conclude, therefore, that the evidence shows a carefully conceived plan in conformity with the purpose and design of the controlling legislation. We think the argument advanced by the appellant that the Authority may not proceed in this case because the land is vacant and not located within a slum area is untenable. There is no such limitation provided in the housing act. Furthermore, the Supreme Court, in the Sherrill case, decided this question. See page 329 where it is stated:

"First, that money in the sum of $7,100,000.00 is to be loaned by the United States Housing Authority to the Cincinnati Housing Authority for the construction of **two low rent housing projects on vacant land.**" (Emphasis added.)

In the Sherrill case the Supreme Court cited, in support of its decision, as one of the representative cases of other jurisdictions Housing Authority of County of Los Angeles v. Dockweiler (Cal. Sup.) 94 Pac. 2d 794.

In that case it was held inter alia:

"Slum clearance and public housing projects for low income families **being public uses, warranted granting of power of eminent domain** to housing authority of the County of Los Angeles and other local housing authorities." (Headnote 5.) (Emphasis ours.)

Riggin v. Dockweiler et al, 104 Pac. 2d 367, decided by the Supreme Court of California July, 1940, (about five months after the Sherrill case) it was held:

"The federal and state housing acts were enacted to provide for low cost housing incidental to slum clearance, but **there is no requirement that the new structures be confined to slum areas.**" (Emphasis added.)

There remains one further question. Appellee, by way of argument and brief, complains because the trial court in the injunction case by decree provided that payment and possession should be enjoined until adequate zoning changes have been made, but provided that the "defendant may make deposit of the amount assessed with the court in order to provide the basis for an order to entitle the defendant to make the necessary zoning changes." In the absence of a cross appeal by appellee we do not consider the action complained of is before us for review, and therefore do not determine the question.

It is our conclusion, for the reasons stated, that the judgments of the trial court in both cases, must be and therefore are affirmed. Exceptions noted. Order see journal.

SKEEL, PJ, KOVACHY, J, concur.