EMMA LUNDY, Respondent, v. CITY OF
SEDALIA, Appellant.

Kansas City Court of Appeals, March 4, 1912.

1. **NEGLIGENCE:** Cities: Falling Limbs. While walking on the
sidewalk along a public street in Sedalia a rotten limb of a tree
fell and struck plaintiff and injured her. The appearance of
the limb after it fell indicated that it had been in a rotten con-
dition for a long time. The city's officers had no actual knowl-
edge of the condition of the limb. *Held,* that it was a question
for the jury to determine as to whether or not the city officials
could have, by the exercise of reasonable care, discovered that
the limb was rotten and a source of danger in time to have
prevented the injury.

2. ———: ———: ———. Cities must exercise reasonable
care to keep their streets reasonably safe from falling sub-
stances, as well as from defects in the roadbed.

Appeal from Pettis Circuit Court.—*Hon. Louis
Hoffman,* Judge.

AFFIRMED.

*E. W. Couey* and *W. W. Blain* for appellant.

*A. L. Shortridge* and *W. D. Steele* for respondent.

BROADDUS, P. J.—This is an action for dam-
ages for an injury which plaintiff claims to have re-
ceived while passing along a sidewalk in a resident
district of the city of Sedalia. The injury was caused
by a dead limb falling from a maple tree which grew
between the curb and sidewalk in front of resident
property. The injury occurred on the 14th day of
September, 1909, and while the tree was in foliage.
The maple tree in question was somewhat decayed
on its west side, and had a dead limb about eleven
inches in diameter and from four to six feet long
which extended in an angling position somewhat up-

ward, over and about seven feet above the sidewalk. The day in question was clear and calm, and while plaintiff and her sister were passing along the sidewalk, and when they came under the tree the limb fell from its position and struck and severely injured plaintiff.

The evidence showed that the limb was rotten to such an extent that the outer end broke into pieces when it hit the sidewalk, and that it had been in a rotten condition for a long time. Exhibit A shows the appearance of the tree and the position of the limb on it before it fell upon plaintiff. There was no evidence that any of the city's officers had any knowledge of the existence of the dead limb in question, and the court so instructed the jury. No complaint was ever made to the city officials that the limb was dangerous, or that anyone ever gave it particular attention. Its condition seems to have escaped the attention of persons passing over the walk, or, at least, there was no evidence to that effect except that of one person, who stated that she had noticed the dead limb, but it had not occurred to her that it was dangerous. The plaintiff recovered in the sum of $800 from which defendant appealed.

The principal question raised by the city is that the judgment is not supported by the evidence, and for that reason the court should have given the defendant's instruction at the close of plaintiff's testimony and at the close of all the testimony, that under the pleadings the plaintiff was not entitled to recover.

It is the law that, "Cities must exercise reasonable care to keep their streets reasonably safe from falling substances as well as from defects in the roadbed." [Loth v. City of Columbia Theatre Co., 197 Mo. 350; Franke v. The City of St. Louis, 110 Mo. 516.] There is no doubt about the duty of cities in such cases. But appellant contends that it was not

shown that defendant was guilty of such negligence as would render the city liable for the injury plaintiff sustained. The fact that the limb was rotten and fell on a calm, clear day is indisputable evidence that it had been in the process of decay for a long time, and for such a length of time had it been an ordinary obstruction of the street it would have been discovered by persons passing, and by city officials. In some instances obstructions in streets have existed for such a length of time that the courts have held, as a matter of law, that notice would be presumed.

The circumstances of this case are, however, different from those usually attending obstruction to the street itself, and it is a serious question to determine whether or not the city should be charged with negligence in not having discovered the condition of the limb and removed it within a reasonable time thereafter. If the city, in the exercise of reasonable diligence, could have made the discovery and removed the limb before plaintiff's injury, it was liable for its want of proper diligence. It is true that none of the numerous persons who passed over the street were produced who had noticed the condition of the limb, but that fact in itself does not preclude the conclusion that defendant's street commissioner should not have made the discovery while in the performance of his duties as such. He was not required to make a particular examination of each tree to see if there was a rotten limb, but it was expected that he would observe defects in the streets or overhead dangers which the ordinary passerby perhaps would fail to notice because he has the right to assume that everything is reasonably safe, and therefore, does not bestow the same attention that the law imposes upon the city's official. There are dangers on the streets besides obstructions on their surfaces or immediately surrounding. Telegraph, telephone poles, and poles carrying electricity, overhead signs, and other overhanging

things and overhanging limbs of trees may become sources of danger to the traveler upon the streets. To prevent danger from such sources it is the duty of the officer of the city entrusted with supervision of the streets to look after such matters. And if it appears that he has been remiss in the performance of that duty, the city will be liable for any injury that may result to a passerby in consequence of his want of reasonable care.

The question before the jury was whether the city's official could have, by the exercise of reasonable care in the discharge of his duties, discovered the rotten limb overhanging the sidewalk but a few feet above the head of an ordinary passerby, and that its condition indicated that it was a source of danger. It was only seven feet above the sidewalk and almost within reach of a person of ordinary stature. Was it not then a question for the jury to say that if the official while in a general way observing, not only the surface of the street, but around and above, would or would not with such casual observation have seen that the limb was rotten and a source of danger? We believe it was. Whatever may be the law as interpreted by the courts of other states, the courts of this state adhere to the doctrine that a city must exercise proper care to keep its streets reasonably safe for travel from sources of danger overhead as well as on the surface. Notwithstanding the adjoining proprietor had a property right in the trees growing along the sidewalks in the streets, yet, the city has the right to remove them if they are obstructions to travel or constitute a nuisance in some other respect.

The counsel on both sides have with much ability presented their adverse contentions to this court. By appellant the case of Cramer v. The City of Burlington, 39 Iowa, 512, is cited. It is there said that: "The knowledge of two or more citizens that a sidewalk is in a dangerous condition, is not notice thereof to the

city.   To render it liable for resulting injuries, it must either have express notice of a defect not in the original construction, or the fact of such defect must be notorious.''   And such is the holding in McGrail v. Kalamazoo, 94 Mich. 52.   The rule thus announced does not prevail in this state.   It is,. perhaps, more just to the cities operating in a governmental capacity.   But the law of this state imposes upon cities the duty to keep their streets in a reasonably safe condition for travelers passing over them, and a city is held liable for an injury resulting from a defect in a street of which it had notice or which it could have discovered by the exercise of reasonable care, not that it had become notoriously defective so as to impart notice to the general traveling public.

In another case is held that where the defect was of such a nature as to have escaped the observation of the traveler in his continual use of the pavement, it was not such as would warrant the imputation of notice to the city.   [Byrne v. City of Philadelphia, 211 Pa. 598.]   The decision seems to be reasonable, but it does not reach the question in this case for there the defect was in the sidewalk, and one which a person who continuously used it ought to have discovered if anyone could have done so.

The appellant's references and argument in general are upon the same line of thought indicated by the cases noted.   Appellant seems to think that the falling of a limb upon a person is a very uncertain and accidental occurrence, and so much so as to inspire a bard to sing,

> ''I'll eat when I'm hungry,
> I'll drink when I'm dry,
> If a limb don't fall on me,
> I'll live till I die.''

Limbs falling from trees are what might be called a rare occurrence. But they do fall as everybody knows including the bards; that they strike someone is not a common occurrence, but they often do. It is not only the most probable dangers a municipality must guard against, but all sources of danger that threaten the safety of persons while on its streets.

We have examined with care appellant's objections to the giving and refusing instructions and find them extremely technical, and not to any extent prejudicial to the rights of appellant. Affirmed. All concur.