STATE ex rel. CITY OF ST. LOUIS, Relator,

v.

Honorable Brendan RYAN, Judge, Circuit Court, St. Louis City, Respondent.

No. 71217.

Supreme Court of Missouri, En Banc.

Sept. 8, 1989.

Helen D. Haskins, Asst. City Counselor, James J. Wilson, City Counselor, St. Louis, for relator.

Loretta W. Moore, Charles L. Wiest, St. Louis, for respondent.

ROBERTSON, Judge.

Relator, the City of St. Louis (the City), invokes sovereign immmunity and seeks a writ of prohibition precluding the respondent trial judge from permitting the plaintiffs in an underlying tort action to proceed against it. The petition alleges, inter alia, a dangerous condition at a housing project operated by the St. Louis Housing Authority (the Authority) that resulted in the wrongful death of a tenant; plaintiffs' suit claims that the City's charter requires the City to provide housing for its citizens and that the Authority is a department and agency of relator. As a result plaintiffs' suit seeks to impose liability on the City for the tenant's death. We hold that as a matter of law relator is cloaked with sovereign immunity for purposes of the underly-ing cause of action. The preliminary rule previously issued is made absolute.

## I.

Yvette Anette Riles lived on the eighth floor of a building in the Darst Webbe Housing Project in the City of St. Louis. Late on the evening of July 23, 1987, Ms. Riles and her five-month-old son returned to the projects. Finding the elevators that service her building inoperable, she mounted the seven flights of stairs required to reach the apartment she shared with her mother and grandmother, carrying her son. When she reached the apartment, Ms. Riles, an asthmatic, could not breathe. Her mother called for emergency medical care. Because the elevators did not work, the suit alleges that emergency personnel were forced to climb the stairs and, because the stairway was too narrow for a stretcher, had to carry the decedent down to the ambulance on their backs. During the descent, the decedent's oxygen supply had to be detached several times. The decedent died two hours later.

Plaintiffs in the underlying action are the mother and son of the decedent. Given its broadest intendment, plaintiffs' petition avers that the defendants were "grossly negligent", inter alia, in failing to maintain the elevator system, that maintenance of a dangerous condition is an exception to sovereign immunity, that the City's charter requires it to furnish housing for its citizens, that the Authority is a department and agency of the City, and that the City is, therefore, liable for the decedent's death.

The City moved to dismiss the amended petition and subsequently moved for summary judgment. The City argued that it is not obliged to provide housing to City residents and that the property upon which the injury occurred is the responsibility of the Authority, not the City. The trial judge overruled both motions. Relator sought a writ of prohibition from the Court of Appeals, Eastern District, without success. Upon the City's application, we issued our preliminary rule in prohibition. For the

reasons which follow, we make the writ absolute.

## II.

Prohibition is appropriate "where it appears on the face of the pleadings that defendant is immune from suit as a matter of law." *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 444 (Mo. banc 1986). The relevant question is whether plaintiffs' pleadings state a claim that would bring relator, the City of St. Louis, within an exception to sovereign immunity as a matter of law.

Following judicial abrogation and legislative reinstatement of sovereign immunity, public entities are cloaked with sovereign immunity unless a statutory exception applies. Section 537.600.1, RSMo 1986; *State ex rel. St. Louis Housing Auth. v. Gaertner,* 695 S.W.2d 460, 462 (Mo. banc 1985). Among the statutory exceptions, the legislature permitted actions against public entities for "[i]njuries caused by the condition of a public entity's property...." Section 537.600.1(2), RSMo 1986. To survive the bar to suit erected by sovereign immunity, plaintiffs must properly plead that the defendants come within the "dangerous condition" statutory exception. In determining the strength of plaintiffs' efforts to penetrate the barrier of immunity, we look to averments of the petition, construing the plaintiffs' petition liberally, accepting as true all properly pleaded factual allegations. *State ex rel. Missouri Dep't of Agriculture v. McHenry,* 687 S.W.2d 178, 184 (Mo. banc 1985). Nevertheless, the relationship between the Authority and relator in this case is a matter of law, determined by the General Assembly of Missouri; plaintiffs' claims concerning the City's connections with the Authority must be examined in light of the legal relationship that exists by virtue of the legislature's intentions.

## A.

▆ Plaintiffs first aver that the City of St. Louis "is charged by its Charter with providing housing services to residents of the City of St. Louis." From this allega-tion, plaintiffs argue on behalf of respondent that the City bears a direct duty to the decedent and is independently liable regardless of the conduct of the Authority.

Their argument to the contrary notwithstanding, plaintiffs candidly concede in their brief that no explicit language in the City's charter imposes a duty on the City to provide housing services. Instead, plaintiffs posit that Section 99.040, RSMo 1986, which empowers the governing body of the City to determine the need for a housing authority, renders the City responsible for housing residents if the City chooses to call a housing authority into being.

We disagree. Section 99.040.1, RSMo 1986, creates "a municipal corporation to be known as 'the housing authority' of the city...." An authority is thus a creature of state statute. While it is true that an authority may not transact business until a city determines that a need exists for a housing authority and declares that need by appropriate "resolution or other declaration", the General Assembly charged the Authority "[t]o prepare, carry out, acquire, lease and operate housing projects; to provide for the construction, reconstruction, improvement, alteration or repair of any housing project." Section 99.080.1(2). The powers of an authority are vested in that authority's commissioners. Section 99.050, RSMo 1986. An authority is designated a separate municipal corporation by the express language of Section 99.080, RSMo 1986. The fact that a city determines that "insanitary or unsafe inhabited dwelling accommodations exist" in the city or that "there is a shortage of safe or sanitary dwelling accommodations ... available to persons of low income", Section 99.040.2, and calls an authority to life for the purpose of transacting business, does not render an authority a department or agency of its city government.

Plaintiffs' averment to the contrary is incorrect as a matter of law. Thus, the Housing Authority, not the City, provides housing services for the City's residents. Because the Authority is an independent municipal corporation over which the City exercises neither direct nor indirect control,

the City is immune from suit for conditions of property operated by the Authority.

### B.

Plaintiffs next allege that "the Authority is and was at all times herein mentioned a department and agency of the government of the City of St. Louis, Missouri, operating under the auspices of the City of St. Louis and pursuant to charter, ordinances, regulations and statutes of the City." Plaintiffs argue for respondent that the City is vicariously liable for the condition of the Darst Webbe property as a result of the City's alleged control over the Authority.

To determine whether the City can be held vicariously liable for the alleged torts of the Authority, we look to the language of the statutes under which the Authority is established and examine the extent of control, if any, that the City exercises over the Authority. E. McQuillan, 18 Municipal Corporations § 753.71 (3rd ed.1984). As we have said, the Authority is a municipal corporation separate and apart from the City. *St. Louis Housing Auth. v. City of St. Louis,* 361 Mo. 1170, 239 S.W.2d 289, 295 (Mo. banc 1951). Deriving its status as a public entity from an act of the General Assembly, the Authority is a political subdivision of the State, Section 99.040, RSMo 1986; *Gaertner,* 695 S.W.2d at 462, and not an agency or department of the City. The Authority exists to further the state interest in housing its urban citizens, Section 99.030, RSMo 1986, not to act as the arm of local government.

Plaintiffs urge this Court to infer that regardless of the statutory character of the relationship between the City and the Authority, the City exerts a kind of management control over the Authority, which subjects the City to suit under the statutory waiver of sovereign immunity. In support of this argument, plaintiffs contend that the mayor's ability to appoint the commissioners who serve on the housing authority allows the city to supervise and direct the actions of the authority.

The statutes speak clearly on this issue. The mayor's duties with regard to the Authority extend only to a limited appointment and removal power. Indeed, the mayor carries a statutory responsibility to appoint housing commissioners under Section 99.050, RSMo 1986. Once appointed, the powers of each authority vest in the commissioners. *Id.* The mayor may remove a commissioner only for "inefficiency, neglect of duty or misconduct in office," and only after opportunity for a hearing. Section 99.070, RSMo 1986.

Nothing within the body of statutes relevant to the housing authority allows the mayor, or any City official, substantive control over the manner in which the authority performs its statutorily mandated tasks. After careful examination of the Authority's enabling statutes, we find no basis upon which to presume that the City directs the actions of the Authority.

### C.

Plaintiffs' petition, while alleging a defect in the condition of the property, fails to establish any connection between the relator City of St. Louis and the alleged "dangerous condition" of the property. Plaintiffs' petition is founded on an incorrect legal premise; the City of St. Louis has neither direct nor indirect legal responsibility for the condition of housing projects operated by the St. Louis Housing Authority. In the absence of such legal responsibility, the City stands behind the impenetrable barrier of sovereign immunity. The circuit court is thus without jurisdiction to permit plaintiffs to proceed against the City. The preliminary rule in prohibition previously issued is made absolute.

All concur.