**Kevin V. FEELY and Christine A. Feely, Plaintiffs–Respondents,**

**v.**

**CITY OF ST. LOUIS, Defendant–Appellant.**

**No. 66158.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 23, 1995.

Edward J. Hanlon, Tyrone A. Taborn, St. Louis, for appellant.

Patrick J. Hagerty, Gray & Ritter, St. Louis, for respondents.

DOWD, Judge.

City of St. Louis (City), Defendant, appeals the trial court's denial of its motion for judgment notwithstanding the verdict after the jury returned a verdict in favor of Kevin V. Feely, et al., Plaintiffs. We affirm.

Viewed in the light most favorable to the verdict, the evidence presented at trial was as follows: Brendan Feely, Plaintiffs' six-year-old son, was attending a summer camp program sponsored by the City in Carondelet Park, a park owned and maintained by the City. On the afternoon of June 19, 1990, Jane Godfrey went to the park to pick up Brendan and another child. She parked her van along a curb near the day camp, exited the van, and went to get the children. She escorted them back to the van and helped them get in through the side door. As she was preparing to leave, a large branch fell from a nearby oak tree and crushed the rear section of the van. Godfrey was able to remove the other child from the van, but Brendan was trapped in the van. By the

time the rescuers were able to remove the branch and reach him, Brendan had died of compression asphyxia, an inability to expand the lungs to receive oxygen.

Two foremen with the City's Forestry Department testified that the Forestry Department did not have any routine or preventive maintenance program for trees in City parks. They stated trees were scheduled to be removed based on referrals they received either from park keepers or citizens, not from the Forestry Department; and the dead or decaying trees were generally not removed from the parks until the winter months when crews were not busy servicing the City's streets. According to one of the park keepers, inspections of trees were done only when there was nothing else to do, and trees were only written up if they were ninety percent dead. However, the tree at issue in this case was located less than one hundred yards from the Department of Forestry and was alongside a driveway used daily by parents to pick up their children from camp.

Mark Grueber, an Urban Forester II employed by the City, testified that during the summers of 1988–90 the City hired college students to effectuate a "reforestification" plan under which every dead tree in the City's parks was to be replaced with a new one. The forms filled out by the college students graded the condition of the tree in question as "fair," the equivalent of a school grade of "C." However, the City made no follow-up on the tree's condition. Grueber also admitted that the ground inspection he did of the tree after its limb broke off indicated the possibility of decay in the upper portion of the tree.

Dan Christie, a professional arborist, testified as an expert witness for Plaintiffs. He examined the tree ninety days after the accident. He stated that the outward appearance of the tree, viewed from street level, indicated it had problems which would have been evident for some time prior to June 19, 1990. The dieback and yellowing of leaves at the crown of the tree indicated a problem with the tree's roots, and the large fruiting mushrooms at its base indicated a problem with decay.

On appeal, City alleges the trial court erred in denying its motion for judgment notwithstanding the verdict because Plaintiffs failed to establish that the City could have, through reasonable care, discovered the defective condition of the tree so as to take remedial action because the tree had the outward appearance of being healthy.

■ In reviewing the denial of a motion for a judgment notwithstanding the verdict, the court of appeals views the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party and disregards all evidence and inferences to determine whether a submissible case was made. *Dierker Associates, D.C., P.C. v. Gillis,* 859 S.W.2d 737, 743[4] (Mo.App.1993). Where reasonable minds can differ on the question before the jury, the court may not disturb the jury's verdict. *Sanders Company Plumbing and Heating, Inc. v. City of Independence,* 694 S.W.2d 841, 844–45 (Mo. App.1985).

■ In order to prevail against the City, Plaintiffs were required to plead and prove:

that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

§ 537.600.1(2). A city has constructive knowledge of a dangerous condition if the dangerous condition is of such nature that, even though not obvious and notorious, it has existed for such a length of time that the city in the exercise of ordinary care could and should have discovered and remedied it. *Douglas v. City of St. Louis,* 823 S.W.2d 78, 79 (Mo.App.1991).

■ In its brief, the City states *Lundy v. City of Sedalia,* 162 Mo.App. 218, 144 S.W.

889 (1912) is the only Missouri case factually similar to this case. However, the *Lundy* court upheld a judgment against the city finding there was sufficient evidence to submit to the jury the question of whether the city could have, in the exercise of reasonable care, discovered the condition of the limb that fell because there was evidence that the limb had been in a rotted condition for some time, and that the rotted condition could have been detected from the street. *Id.* at 891[2]. In fact, the court stated, although it was improbable that a falling limb would injure someone on a city street, this did not relieve the city of liability as it must guard against all sources of danger that threaten the safety of persons on its streets. *Id.* at 891[5].

However, City argues we should reverse the trial court's denial of its motion for a judgment notwithstanding the verdict based on several cases from other jurisdictions where the court found the plaintiffs failed to show the trees in question presented a dangerous condition. *See, Carver v. Salt River Valley Water Users' Association,* 104 Ariz. 513, 456 P.2d 371 (1969), and *Berkshire Mutual Fire Ins. Co. v. State of New York,* 9 A.D.2d 555, 189 N.Y.S.2d 333 (1959); *Pietz v. City of Oskaloosa,* 250 Iowa 374, 92 N.W.2d 577 (Iowa 1958). While not binding, all of these cases are also factually distinguishable either because there was no evidence that the trees' rotted condition was apparent from the outside or because the weather, rather than the trees' defective condition, played a major role in why the tree fell. In its brief, the City argues, "All of these cases from other jurisdictions hold that a defendant governmental entity cannot be charged with negligence in not knowing that which is not readily apparent." In this case, the jury could have reasonably found the tree's decaying condition should have been reasonably apparent to the City because (1) the tree was located less than one hundred yards from the Department of Forestry near a street and picnic area; and (2) signs that the tree was in poor condition, including: dieback of the crown, dead wood throughout, and fruity bodies at the base, were visible from the street. A safe forestry program must at least have a system of preventive maintenance which monitors trees in heavily trafficked areas. Point denied.

Judgment affirmed.

CRANE, P.J., and CRANDALL, J., concur.