Bessie THOMPSON, Individually and as next friend for minor Plaintiffs Kerry June Thompson, Cassandra Lee Thompson and David Wayne Thompson, Plaintiffs–Respondents,

v.

The CITY OF WEST PLAINS, Missouri, Defendant–Appellant.

No. 20640.

Missouri Court of Appeals, Southern District.

Oct. 21, 1996.

Gerard T. Noce, Adrian P. Sulser, Evans & Dixon, St. Louis, for defendant-appellant.

Dale R. Engelbrecht, Henry, Henry, Henry, Engelbrecht & Williams, P.C., West Plains, for plaintiffs-respondents.

BARNEY, Presiding Judge.

Appellant City of West Plains, Missouri, (City) appeals from the judgment of the Circuit Court of Howell County, Missouri, after a jury verdict in favor of Respondent Bessie

Thompson (Plaintiff) in her individual capacity as the spouse of Herschel Wayne Thompson (Decedent), and as next friend for their minor children.

On November 6, 1989, Herschel Thompson sustained fatal injuries when an awning attached to the Pioneer Auction Building collapsed in the City of West Plains. A review of the trial record shows decedent was on the awning when it collapsed.

The awning in question was attached to the north side of the building by eyebolts that went through the brick and block of the primary structure. It extended the length of the building over the City's sidewalk to which the building abutted. The building was owned by Dennis and Howard Young.

During the two to three week period of time prior to the incident, the building's roof and second story had been removed. The project director had spoken to the City's building inspector about the project prior to its undertaking. Although a city ordinance required the issuance of permits for the demolition and reconstruction of a building, the building inspector did not enforce this requirement. The building inspector had made three inspections of the building but no inspection involved an examination of that portion of the building where the awning was located.

Plaintiff brought a wrongful death action against the City on the basis of the unsafe condition of the City's *sidewalk*, to which the building abutted. Plaintiff alleged that an awning hung directly over the adjacent sidewalk and that the awning was being used as a scaffold in reconstructing the Pioneer Auction Building. Plaintiff asserted that this constituted an unsafe condition of the City's sidewalk. Plaintiff alleged that the City was aware of the unsafe condition of its sidewalk and failed to use ordinary care to remedy or warn of such a condition, and as a direct result of such failure Mr. Thompson sustained injuries causing his death.

During trial the City moved for a directed verdict followed by a post-trial motion for judgment notwithstanding the verdict; both were denied.

**1.** All statutory references are to RSMo 1986.

## I.

City posits two points of trial court error. This Court reviews only the first point as it is dispositive herein.

In its first point, City asserts that the trial court erred in failing to direct a verdict in its favor and/or enter a judgment notwithstanding the verdict for the reason that Plaintiff's evidence did not establish the existence of a dangerous condition on the City's property, i.e., its sidewalks. City also argues that Decedent's injuries did not result from the City's allegedly negligent conduct, as required by the exception to the sovereign immunity statute as codified in § 537.600.1(2).[1]

■■■ " 'Where failure to grant a directed verdict for the defendant is the error asserted, we review the evidence presented at trial to determine whether or not the plaintiff introduced substantial evidence that tends to prove the facts essential to plaintiff's recovery.' " *Amador v. Lea's Auto Sales & Leasing, Inc.*, 916 S.W.2d 845, 852 (Mo.App.1996). In ruling on a motion for judgment notwithstanding the verdict, all evidence and inferences therefrom are considered in a light most favorable to the verdict. *Id.* at 852–53.

## II.

A review of the testimony and trial record leads this Court to conclude that the Decedent was not using the City's sidewalk adjacent to the building at the time of the awning's collapse, a fact virtually conceded in Plaintiff's brief. The testimony is devoid of any probative account that placed him on the sidewalk.

Hal Young was on the awning at the time of its collapse. Although he testified that his back was turned to the Decedent, he stated that they were engaged in conversation. He testified that he felt that Decedent was still on the awning at the time of its collapse. Mr. Young further stated that he was able to jump free from the falling awning, but the Decedent either could not or did not and fell to the sidewalk.

Robin Stites, a paramedic, arrived on the scene shortly after the incident. She testified that the Decedent was on top of the awning that had fallen to the sidewalk.

### Discussion

■ A municipal corporation is a 'public entity' within the meaning of §§ 537.600 and 537.610. *Wollard v. City of Kansas City,* 831 S.W.2d 200, 201 (Mo. banc 1992). Under the provisions of § 537.600.1(2), sovereign immunity is waived for injuries caused by the dangerous condition of a public entity's property. *Kanagawa v. State ex rel. Freeman,* 685 S.W.2d 831, 834 (Mo. banc 1985). However, provisions waiving sovereign immunity must be strictly construed. *Id.* A plaintiff seeking to state a claim under the aforesaid provision must show:

(1) a dangerous condition of the property; (2) that the plaintiff's injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition.

*Id.* at 835.

■ City sidewalks are considered city property and "[a] city has a non-delegable duty to maintain its sidewalks in a reasonably safe condition for use by the public or to warn of dangers and defects in those sidewalks." *Schweizer v. City of Maplewood,* 784 S.W.2d 842, 843 (Mo.App.1990); *Smith v. City of St. Louis,* 671 S.W.2d 446, 447 (Mo. App.1984).

■ In the instant case, Plaintiff has failed to produce evidence establishing that the City owned, controlled or maintained the awning of the Pioneer Auction Building. The City, therefore, cannot be liable for any defective condition on that property. *See Summitt by Boyd v. Roberts,* 903 S.W.2d 631, 635–36 (Mo.App.1995); *State ex rel. City of St. Louis v. Ryan,* 776 S.W.2d 13, 15–16 (Mo. banc 1989); *Tyler v. Housing Auth. of Kansas City,* 781 S.W.2d 110, 113 (Mo.App.1989).

In the maintenance of its sidewalks, the City was not charged with the duty of and had no power to maintain the awning, even though it was adjacent to and was overhanging the sidewalk. Although there was evidence presented tending to show that the support of the awning was weakened by the removal of the second floor of the building, there is no evidence to show that the City was in charge of the renovation project.

In *Horstman v. Glatt,* 436 S.W.2d 639 (Mo. 1969), a workman was injured when the marquee upon which he was standing fell to the ground. He was attempting to perform repair work on a sign located on the marquee when it fell on the public sidewalk below. The Missouri Supreme Court held that the workman "was not *on* a public way when the marquee fell. He may have been *over* a public way, but he was on the marquee not in the exercise of a right granted the public generally but at the express invitation of the lessee [hotel management]. But for such invitation, he would have had no right to have been upon the marquee." *Id.* at 643. The Court then stated that:

The fact that the tenants and the owners subsequently sought permission of the City of Kansas City to erect a new marquee to replace the fallen one does not evidence that [the workman] was on a public way at the time of the fall. Municipal regulation of such structures is common, but such regulation does not cause such structure to acquire the incident of a public way.

*Id.* at 643.

Plaintiff cites *Feely v. City of St. Louis,* 898 S.W.2d 708 (Mo.App.1995) for the proposition that "City must guard against all sources of danger that threaten the safety of persons on its streets," including awnings hanging over a sidewalk. However, *Feely* is distinguishable on its facts.

In *Feely* a van was parked in a park owned and maintained by the City of St. Louis. An apparent rotten branch fell from a city tree and crushed the rear section of the van, leading to the death of a child in the van. The evidence showed that the city had control of the park, the streets in the park and the trees in the park. In the case *sub judice* the City had control of the sidewalk but did

not own the building to which the awning was attached. Further, unlike *Feely*, the evidence shows that the injured party had been on top of the awning at the immediate time of its collapse and not on the sidewalk below it.

In short, there simply was insufficient evidence establishing a dangerous condition of the City's property, i.e., its sidewalks. Charles Tharp and Howard Young both testified that there were no cracks, holes or other physical defects in the sidewalk in front of the Pioneer Auction Building.

Plaintiffs did not dispute this testimony and instead offered evidence concerning the City's alleged failure to enforce its municipal ordinances and building codes. However, there is simply no nexus between the maintenance of the City's sidewalks and a duty of care owed to the Decedent while he was on the awning where he sustained his injuries.

■ "In an action for negligence, the plaintiff must prove (1) a duty of the defendant to the plaintiff; (2) the defendant failed to perform that duty; and (3) the breach of duty by the defendant was the proximate cause of the injury to the plaintiff." *Coleman v. City of Kansas City, Mo.*, 859 S.W.2d 141, 147 (Mo.App.1993).

Actionable negligence requires a causal connection between the conduct of the defendant and the resulting injury to the plaintiff. If a causal connection exists, it is said that the negligence charged is the proximate cause of the injury. Proximate cause, and hence, a causal connection, are present if the evidence shows the negligence to have been the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant.... The mere fact that injury follows negligence does not necessarily create liability; the plaintiff has the burden of showing a causal connection between the submitted negligence and the injury. If the evidence leaves the element of causal connection in the nebulous

twilight of speculation, conjecture and surmise, plaintiff's burden is not met.

*Oldaker v. Peters*, 869 S.W.2d 94, 100 (Mo. App.1993) (citations omitted); *see also Jones v. Ames*, 901 S.W.2d 160, 163 (Mo.App.1995).

■ Plaintiff has failed to show how the City's action *in the maintenance* of its sidewalks could have been the efficient and proximate cause of the collapsing awning and Decedent's subsequent injury.

■ " 'The practical test of proximate cause is generally considered to be whether the negligence of defendant is that cause or act of which the injury was the natural and probable consequence.' " *Eckert v. Thole*, 857 S.W.2d 543, 545 (Mo.App.1993). In that connection the opinion in *Eckert* is instructive. In *Eckert* plaintiff alleged that defendant's failure to obtain a permit from the city for certain structural alterations to defendant's drainage system caused water to accumulate and freeze on adjacent sidewalks. The Eastern District of this Court held there was no proximate cause between plaintiff's injury and the failure to obtain the permit. It stated: "[i]f there was an artificial accumulation of ice resulting from a drainage alteration, that event was caused by the manner in which the drainage was constructed, not by the failure to obtain a building permit." *Id.* at 546.

■ Even presupposing a sufficient nexus between the accident and the use of the sidewalk, an alleged failure to inspect and/or supervise the demolition/renovation project in the instant case would not constitute a "physical defect" nor a "dangerous condition" of the city sidewalks per se, under the provisions of the statute waiving a public entity's sovereign immunity.

In *Twente v. Ellis Fischel State Cancer Hosp.*, 665 S.W.2d 2, 11–12 (Mo.App.1983), plaintiff was assaulted and raped on the parking lot of the hospital where she was employed. She argued that the hospital parking lot was a "dangerous condition" because the hospital officials were aware of other rapes and assaults that had been committed there and despite these facts no security guards were at their post when plaintiff

was assaulted. In rejecting her claim, the court pointed out, "[t]he statute does not say that the negligent or wrongful act or omission of an employee, or the actual or constructive notice are unto themselves a 'dangerous condition'." *Id.* at 11. The court concluded that the General Assembly intended to limit the term 'dangerous condition' exclusively to the *physical* condition of the public property. *Id.* The court also stated the statutory language "dangerous condition" referred to "some physical defect of the property...." *Id.* at 12.

In *Stevenson v. City of St. Louis School Dist.*, 820 S.W.2d 609 (Mo.App.1991), the Eastern District of this Court stated that:

> Our courts have required the property to be physically defective in order to constitute a dangerous condition. The petition must specifically allege a physical defect. This concept includes the negligent placement or failure to remove foreign objects from an area where they create a hazard. *Alexander v. State,* 756 S.W.2d 539, 541 (Mo. banc 1988) (negligent placement of a folding room partition at the foot of a ladder on which plaintiff was working); *Jones v. St. Louis Housing Authority,* 726 S.W.2d, 766 (Mo.App.1987) (negligent failure to remove debris on grounds). However, this concept does not include property which is not itself physically defective, but may be the site of injuries as a result of the misuse or other intervening act.

*Stevenson,* 820 S.W.2d at 612.

Plaintiff has failed to show an actual physical defect of the sidewalk itself that may have caused or contributed to cause Decedent's injuries. Even the barricading of the sidewalk adjacent to the Pioneer Auction Building would not have prevented the awning's collapse.

The trial court erred in failing to sustain Defendant's motion for directed verdict or for judgment notwithstanding the verdict. The judgment in favor of Plaintiff, both in her individual and representative capacity, is vacated.

The judgment is reversed and remanded to the trial court for its entry of a judgment in favor of Defendant.

GARRISON and PREWITT, JJ., concur.