**Carolyn O'DELL, Appellant,**

v. .

**MISSOURI DEPARTMENT
OF CORRECTIONS,
Respondent.**

**No. ED 77013.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 30, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 2000.

Cynthia S. Holmes, Cynthia S. Holmes, P.C., Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, John J. Lynch, Asst. Atty. Gen., St. Louis, for respondent.

PAUL J. SIMON, Judge.

Carolyn O'Dell, appellant, appeals from the trial court's grant of summary judgment in favor of the Missouri Department of Corrections (MDOC), respondent, an agency of the State of Missouri charged with operation of prison facilities.

In her point on appeal she contends that the trial court erred in granting MDOC's motion for summary judgment because there were numerous disputes of fact in that the record demonstrated sufficient facts that she was injured due to a dangerous condition at the Farmington Correctional Center (FCC), a facility operated by respondent, caused by an act or omission of respondent's employees or a dangerous condition of which respondent knew or of which it had constructive notice. We affirm.

When considering an appeal from a summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp* ., 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially de novo. *Id.* The criteria on appeal for testing the propriety of summary judgment are identical to those the trial court employs to determine the propriety of sustaining the motion initially. *Id.* The burden on a summary judgment movant is to establish that there are no genuine issues of material fact and that the movant is

entitled to judgment as a matter of law. *Id.* at 377.

A movant may establish a right to summary judgment by showing: (1) the facts that negate any one of the claimant's fact elements; (2) that the non-movant has not been able to produce, and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 381.

Once a movant has met this burden established by Rule 74.04(c), the non-movant's only recourse is to show——by affidavit, depositions, answers to interrogatories or admissions on file——that one or more of the material facts shown by the movant to be undisputed is, in fact, genuinely disputed. *Id.* When analyzing the propriety of summary judgment, an issue is considered genuine only if it is real and substantial—not one consisting of "conjecture, theory and possibilities." *ITT*, 854 S.W.2d at 378.

The record, viewed in the light most favorable to appellant, reveals that on February 19, 1994 she visited her husband Denver, an inmate at FCC, in visiting room B. During her visit, she was injured by portions of ceiling tile which fell on her. A 2 × 4 foot ceiling tile had become saturated with moisture from a leaking steam pipe located above the tile. The tile crumbled and fell on appellant, hitting her head and left shoulder and caused her immediate pain in those areas. She noticed that the pieces of ceiling tile were water-stained and visibly wet.

After leaving the FCC the pain in her shoulder became worse as she drove home. Appellant then sought treatment later that day at Barnes–St. Peters Hospital. Since the date of the injury, she has undergone physical therapy and has been treated by several medical practitioners.

In October of 1998, appellant filed an Amended Petition containing three counts. Counts I and II sought relief from MDOC for her personal injuries from the ceiling tile and the contraction of tuberculosis, respectively. Count III sought relief from Correctional Medical Services (CMS) for appellant's contraction of tuberculosis. MDOC moved to dismiss Count I and II of the Amended Petition and CMS moved to dismiss Count III. The trial court granted MDOC's motion to dismiss Count I and CMS's motion to dismiss Count III. However, the trial court denied MDOC's motion to dismiss Count II of the Amended Petition.

In Count II of her Petition, appellant alleged that (1) MDOC failed to secure the ceiling in an area in which the public was allowed to visit; (2) MDOC failed to inspect the area to determine whether there were loose areas in the ceiling which might fall on and injure visitors; (3) MDOC failed to warn visitors of the dangerous ceiling condition; (4) The alleged omissions on the part of MDOC were negligent; (5) MDOC's negligence caused the visiting area to be in a dangerous condition; (6) her injury occurred on the property of MDOC and was the direct result of the negligence of MDOC. After the trial court denied MDOC's motion to dismiss Count II of appellant's Amended Petition, MDOC filed an answer, wherein it denied all of the above allegations and pleaded as affirmative defenses failure to state a claim, sovereign immunity, comparative fault of appellant and appellant's failure to mitigate damages.

Subsequently, MDOC filed a motion for summary judgment. In its motion, MDOC contended that (1) appellant failed to state a claim upon which relief could be granted; and (2) appellant's action was barred by the doctrine of sovereign immunity.

In support of its motion for summary judgment MDOC presented affidavits from Bob Moran, an FCC corrections officer, and David Boyd, the plant maintenance engineer of FCC at the time of the inci-

dent. In addition, MDOC filed a memorandum of law. The Boyd affidavit stated that since January of 1992 the ceiling tiles in visiting room B were in good condition, that there was neither a history of falling ceiling tile in that room nor a history of leaking pipe problems. In addition, both documents asserted that the pipes in visiting room B were hidden from view by the ceiling tiles, and Boyd was not aware of any water accumulating above ceiling tiles in that room since January of 1992. Finally, both documents stated that neither Boyd, FCC maintenance staff, nor prison inmates worked on the pipes in visiting room B since January of 1992 (except for the date of the incident), and that there was no audit plan in place to inspect either the ceiling tiles or the pipes in that room.

Appellant filed her response to MDOC's motion supported by several affidavits and a memorandum. In her response she did not admit or deny the allegations listed above. Further, she alleged that MDOC's failure to inspect the pipes created a dangerous condition at FCC. Finally, she alleged that MDOC had constructive notice of the leaking pipes in visiting room B. To support her contention, appellant relied on her own affidavit and that of Robert Hooper, an employee of FCC. In her affidavit, appellant stated that the ceiling tile which fell on her was water stained and visibly wet. Hooper opined in his affidavit that "the water line must have been leaking for some time and soaked the ceiling tile causing it to break and fall."

Appellant contended that the incident of the falling ceiling tile fell within the "dangerous condition" exception to sovereign immunity because either MDOC, by its failure to inspect the pipes and tiles in visiting room B, was negligent and created a dangerous condition or that MDOC had actual or constructive notice of the problem with the pipes. The trial court granted MDOC's motion for summary judgment. In doing so, the trial court assumed without deciding that O'Dell had met her burden in establishing elements (1)

through (3) of the "dangerous condition" exception to sovereign immunity in *Necker by Necker v. City of Bridgeton*, 938 S.W.2d 651, 654 (Mo.App. E.D.1997). However, the trial court found that appellant failed to establish the fourth element, namely, that of the creation of the dangerous condition or actual or constructive notice of the dangerous condition.

In her point on appeal she contends that the trial court erred in granting MDOC's motion for summary judgment because there were numerous disputes of fact in that the record demonstrated sufficient facts that she was injured due to a dangerous condition at the Farmington Correctional Center (FCC), a facility operated by respondent, caused by an act or omission of respondent's employees or a dangerous condition of which respondent knew or of which it had constructive notice.

Under § 537.600.1 RSMo 1994 (all references hereinafter shall be to RSMo 1994 unless otherwise noted), a public entity such as MDOC is afforded sovereign immunity from tort actions. *Necker*, 938 S.W.2d at 654. This immunity, however, is waived pursuant to § 537.600.1(2), when a plaintiff's injuries are caused by the dangerous condition of the public entity's property. *Id.*

To state a claim under the "dangerous condition" exception to the sovereign immunity statute, a plaintiff must establish: "(1) a dangerous condition of the property; (2) that the injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind which was incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive knowledge of the dangerous condition. *Id.* In determining whether or not a plaintiff states a claim under this subsection, this court must strictly construe the statutory provisions which waive a public entity's sovereign immunity. *Id.*

In her response to MDOC's motion for summary judgment, appellant contends that a public entity has a duty to maintain its property for the safety of invitees. She also alleges that MDOC's failure to inspect the pipes in visiting room B constituted a negligent omission which created a dangerous condition on the property of FCC. In support of her contentions, appellant relies principally on *Feely v. City of St. Louis*, 898 S.W.2d 708 (Mo.App. E.D.1995).

In *Feely*, plaintiffs filed a wrongful death action against the City of St. Louis (City). Plaintiffs' son was killed when a large branch from an oak tree fell on a van in which the child was seated. *Id.* The plaintiffs produced expert testimony that the particular tree which caused the death of the plaintiffs' son exhibited problems of decay which should have been evident to City Forestry Officials. The jury returned a verdict in favor of plaintiffs. *Id.* City filed a motion for judgment notwithstanding the verdict, which was denied by the trial court. *Id.* City appealed the trial court's denial of its motion to this Court. *Id.* In affirming the trial court's denial of the City's motion for judgment notwithstanding the verdict this Court found that the jury could have reasonably concluded that the City had constructive notice of the dangerous condition of the tree. *Id.* at 710. This finding was based on the fact that (1) the tree was located less than one hundred yards from the Department of Forestry picnic area; and (2) the tree exhibited signs of being in poor condition which were visible from the street, including: "dieback of the crown, dead wood throughout, and fruity bodies at the base. *Id.* This Court in *Feely* examined the "constructive notice" portion of the "dangerous condition" exception to sovereign immunity in its disposition.

In closing, this Court noted that "a safe forestry program must at least have a system of preventative maintenance which monitors trees in heavily trafficked areas." *Id.* This statement was not the basis for our holding in *Feely*. Appellant, however, relies on this statement as the basis for her contention that MDOC's failure to inspect the pipes in visiting room B created the dangerous condition.

▬ Appellant has not alleged any specific acts of negligence on the part of MDOC employees. She only argues that MDOC's failure to inspect the pipes created the dangerous condition on the property of FCC. This Court has held that "intangible acts such as inadequate supervision ... do not create a dangerous condition." *Necker*, 938 S.W.2d at 655. A dangerous condition necessarily requires some defect of the property, physical in nature. *Id.* The dangerous condition of which appellant complains is the leak of the steam pipe located above the ceiling tiles, and the resultant accumulation of water. The fact that no employee of MDOC had removed the ceiling tile in visiting room B and checked the pipe in question two years prior to the incident is not sufficient evidence that MDOC created the leak. Because appellant has not alleged any other facts of negligence on the part of MDOC or its employees other than failure to inspect the pipes, her claim does not meet each and every element of the "dangerous condition" exception.

Appellant further contends that the trial court erred in concluding that there was no genuine issue of material fact as to whether MDOC had actual or constructive notice of the leaking steam pipe. Appellant does not suggest that MDOC had actual knowledge of the leak in the steam pipe, but does argue that MDOC had constructive notice of the condition.

This Court in *Feely* stated that although a dangerous condition need not be obvious and notorious, an entity "has constructive knowledge of a dangerous condition if the dangerous condition is of such nature that ... it has existed for such a length of time that the [entity] in the exercise of ordinary care could and should have discovered and remedied it." *Feely*, 898 S.W.2d at 709.

Appellant, however, must have alleged facts supportive of this allegation in her

response to MDOC's summary judgment motion by affidavits, exhibits or deposition testimony. The only evidence concerning MDOC's alleged constructive notice that appellant offers in response to MDOC's motion for summary judgment is her own affidavit and that of Hooper, an FCC employee.

In her affidavit, appellant asserts that the ceiling tile which fell on her was water-stained and visibly wet. This statement is unclear in several respects. Appellant does not describe if the stain was wet or dry. Secondly, she does not indicate whether the stain was located in the same position as the wet area or in a different portion of the tile. In short, she offers nothing that would suggest that the water-stain had existed for any period of time prior to the incident.

Hooper, in his affidavit, states his opinion that the water line must have been "leaking for some time," and soaked the ceiling tile causing it to break and fall. While it is clear that the leak must have occurred long enough to cause the ceiling tile to fall, the crucial issue is whether or not MDOC had constructive notice of the leak. The phrase "some time" used by Hooper in his affidavit is speculative. It is unclear whether "some time" means several hours, several days or longer. Since appellant's contentions contained in both her affidavit and that of Hooper are unclear, we may not speculate as to their meaning.

Appellant has not raised a genuine issue of material fact and has failed to establish each element of the "dangerous condition" exception. Therefore, the trial court did not err in granting summary judgment in favor of MDOC.

Judgment affirmed.

GARY M. GAERTNER, P.J. and JAMES R. DOWD, J., concur.